Michael BRIGHT, Petitioner,

v.

IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.

No. 87–4693
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Feb. 22, 1988.

Peter D. Williamson, Houston, Tex., for petitioner.

Edwin Meese, III, Atty. Gen., Dept. of Justice, Parker Singh, Asst. Atty. Gen., Robert L. Bombough, Director, Office of

Immigration Lit., Civil Div., Madelyn E. Johnson, Joan E. Smiley, Attys., Washington, D.C., for respondent.

John B.Z. Caplinger, Acting Dist. Director, I.N.S., New Orleans, La., Ronald G. Parra, Deputy District Director, I.N.S., Houston, Tex., for other interested parties.

Before GEE, GARWOOD and
JONES, Circuit Judges.

PER CURIAM:

Petitioner seeks review of his voluntary departure order issued by an immigration judge and upheld on appeal by the Board of Immigration Appeals ("BIA"). We reject his claims as meritless and deny his petition.

Michael Bright, a Pakistan citizen, entered the United States as a nonimmigrant visitor on April 3, 1985. Petitioner was authorized to stay in this country until October 2, 1985. Having remained here beyond October 2nd, Petitioner received from the Immigration and Naturalization Service ("INS") an Order to Show Cause why he should not be deported. At his deportation hearing, Bright's counsel sought an indefinite continuance until the Executive Office of Immigration Review ("EOIR") published its rules in final form for the administration of deportation hearings by special inquiry officers ("immigration judges").[1] The immigration judge denied the motion for a continuance and proceeded to conduct the hearing purusant to § 242 of the Immigration and Nationality Act of 1952, as amended ("the I & N Act"). 8 U.S.C. § 1252. The judge found Bright deportable. Petitioner appealed the decision to the BIA and lost. Now, he petitions us to review the matter.

On petition, Bright raises two issues: the immigration judge's unwillingness to grant him a continuance violated 1) his statutory rights under the Administrative Procedure

1. In February 1983, the Attorney General promulgated regulations separating the BIA immigration judges from the INS by establishing the

EOIR. 48 Fed.Reg. 8038–8040 (1983) (codified at 8 C.F.R. § 3.0).

Act ("APA") and 2) his due process rights under the Fifth Amendment to the Constitution.[2]

### 1. Challenge Under the APA.

Petitioner argues that immigration judges had no governing rules to enable them to conduct deportation hearings between 1983 and 1987. The Attorney General established the EOIR in February 1983 and the EOIR promulgated and published its final rules of Court in January 1987. In conducting their hearings between 1983 and 1987, immigrations judges followed the existing statutory rules governing such hearings; namely, § 242(b) of the I & N Act.

Petitioner contends that the Attorney General created a new "agency" in 1983. Because agencies are subject to the public notice requirements of the APA, the immigration judges who were newly subject to the oversight of the EOIR could not hold deportation hearings until the BIA had stated and published in the Federal Register its "rules of procedure" and "substantive rules of general applicability." 5 U.S. C. § 552(a)(1)(C), (D). Petitioner cites 8 C.F.R. 3.1(d)(3) as authority for his contention that the immigration judges conducted hearings without any governing rules.

8 C.F.R. § 3.1(d)(3) states, in pertinent part, that the BIA "shall have authority, with the approval of the Director, EOIR, to prescribe rules governing proceedings before it." Petitioner urges us to interpret this section to mean that immigration judges had no governing rules at the time they became employees of the new agency; thus, either the EOIR or the BIA (with the approval of the EOIR director) had to prescribe such rules before hearings could be conducted.

At the time of petitioner's deportation hearing, the immigration judge acted in compliance with the *existing* regulations governing the actions of such officers. 8 C.F.R. § 242.8.[3] The regulations issued in 1983 establishing the EOIR did not attempt *at that time* to alter the governing rules that had been followed by immigration judges for over thirty years. The regulatory section amended in 1983 to place the BIA under the delegatory authority of the newly-created EOIR (8 C.F.R. § 3.1(a)(1)) authorizes the BIA to hear appeals from decisions of immigration judges made under 8 C.F.R. § 242.[4] It is clear that the new regulations establishing the EOIR did not take away the authority of immigration judges to decide deportation cases under § 242. As the Memorandum Decision of the Immigration Judge for this case declares:

> The request for a continuance was denied by the court. These proceedings have been instituted under the existing regulations, [sic] this court derives its jurisdiction from those regulations, and counsel, who is an experienced practitioner in the immigration law, is presumably familiar with the existing laws and regulations.

Rec. p. 17.

Since the governing rules were in place when immigration judges changed employment hats, no violation of the APA occurred. The notice requirements of the APA set forth a reasonable measure for alerting parties to recent changes in procedures and substantive standards of review by the agency to which the parties may be subject. 5 U.S.C. § 552(a)(1). In 1983, no changes were made to the governing rules for deportation hearings; only channels of authority were manipulated with the antici-

---

**2.** Specifically, petitioner argues that the EOIR failed to comply with the requirements of 5 U.S.C. § 552(a)(1) for giving notice to the public of the substantive and procedural rules under which the agency conducts its hearings. 5 U.S. C. § 552(a)(1)(C), (D).

**3.** The section states:
§ 242.8 Immigration Judges
(a) *Authority.* In any proceeding conducted under this part the immigration judge shall

have the authority to determine deportability and to make decisions, including orders of deportation, as provided by section 242(b) of the Act.

**4.** "Appeals shall lie to the Board of Immigration Appeals from the following:
(2) Decisions of special inquiry officers in deportation cases, *as provided in part 242 of this chapter.*"
8 C.F.R. § 3.1(b) (emphasis added).

pation that governing rules would be altered at some time in the future.

2. Challenge Under the Due Process Clause of the Fifth Amendment.

Petitioner also argues that the immigration judge applied rules that belonged to a different agency: by not following the law, the immigration judge prejudiced Bright and deprived him of a meaningful hearing. This contention lacks any merit. As discussed above, the immigration judge used procedures in effect at the time of petitioner's deportation hearing. His decision not to grant a continuance was within his sound discretion.

Our court has held that "the grant of a continuance rests in the sound discretion of the immigration judge, who may grant an adjournment of a deportation hearing only for 'good cause.'" *Patel v. United States Immigration and Naturalization Service,* 803 F.2d 804, 806 (5th Cir.1986) (citing 8 C.F.R. § 242.13). At Bright's deportation hearing the immigration judge clearly did not abuse his discretion in refusing to grant an indefinite continuance. Bright's motion for a continuance lacked any showing of good cause; in fact, it was based on the mistaken assumption that the judge did not have the authority to conduct the hearing.

Bright had a fair hearing. He received notice, was granted one continuance in order to prepare for the hearing, and was given an opportunity to respond to each allegation in the show cause order. Accordingly, his Fifth Amendment claim lacks any merit.

For the reasons stated in this opinion, Bright's petition is

DENIED.