# In the
# United States Court of Appeals
## For the Seventh Circuit

---

No. 06-3617

DMITRY M. KLEMENTANOVSKY,

*Petitioner*,

*v.*

ALBERTO R. GONZALES,

*Respondent.*

---

Petition for Review of an Order of
the Board of Immigration Appeals.
No. A71-235-839

---

ARGUED MAY 31, 2007—DECIDED AUGUST 28, 2007

---

Before POSNER, KANNE, and WILLIAMS, *Circuit Judges*.

KANNE, *Circuit Judge*.    Dmitry M. Klementanovsky brings a petition for review of the Board of Immigration Appeals' ("BIA") order affirming the Immigration Judge's ("IJ") decision to deny his application for a waiver of inadmissibility under § 212(h) of the Immigration and Nationality Act (INA), and ordering his removal to Russia. He argues that the BIA erred by concluding that he was an aggravated felon and that the statute, as interpreted by the BIA, is unconstitutional. For the reasons set forth below, we deny the petition for review.

## I. HISTORY

Klementanovsky is a native and citizen of Russia. In January of 1994, at the age of sixteen, he immigrated into the United States with his parents as religious refugees. He became a lawful permanent resident on July 9, 1995. In the ten years after arriving in the United States, his parents began the path to citizenship and Klementanovsky fell into a life of petty crime. In August of 1996, he was convicted of attempted robbery, robbery, and intimidation by threat of physical harm. *See* 720 ILL. COMP. STAT. 5/12-1, 5/18-1, and 5/12-6(A)(1). In October of 1998, he was convicted of criminal damage to property. *See* 720 ILL. COMP. STAT. 5/21-1(1)(a). In November of 2000, Klementanovsky was convicted of retail theft. *See* 720 ILL. COMP. STAT. 5/16A-3(a). In April of 2001, Klementanovsky was convicted once again of criminal damage to property, and in April of 2004 he returned to retail theft. Although a variety of sentences of probation, supervision, and community service were imposed for these convictions (all in Illinois state courts), Klementanovsky was not ordered to serve any time in prison.

This expanding collection of convictions had two effects on Klementanovsky's immigration status: he became both deportable and inadmissible. *See* 8 U.S.C. §§ 1227(a)(2)(A)(i)(II) and 1227 (a)(2)(A)(ii); 8 U.S.C. §§ 1182 (a)(2)(A)(i)(I) and 1182 (a)(2)(B). In April 2004, the Government placed Klementanovsky in removal proceedings and issued him a notice to appear. It charged him with deportability under 8 U.S.C. § 1227(a)(2)(A)(i)(II) (conviction of a crime involving moral turpitude for which a sentence of one year or more may be imposed), and under 8 U.S.C. § 1227(a)(2)(A)(ii) (conviction of multiple crimes involving moral turpitude). Klementanovsky admitted all but one of the allegations in the notice to appear, and he conceded deportability.

Klementanovsky sought relief from removal by asking for a waiver of inadmissibility under INA § 212(h)(1)(B), 8 U.S.C. § 1182(h)(1)(B). Section 212(h) provides that the Attorney General may waive certain grounds of inadmissibility, including the grounds applicable to Klementanovsky enumerated at INA §§ 212(a)(2)(A)(i)(I) and 212(a)(2)(B), for an immigrant who is the son of United States citizens:

> if it is established to the satisfaction of the Attorney General that the alien's denial of admission would result in extreme hardship to the United States citizen . . . and . . . the Attorney General, in his discretion, and pursuant to such terms, conditions and procedures as he may by regulations prescribe, has consented to the alien's applying or reapplying for a visa, for admission to the United States, or adjustment of status.

8 U.S.C. § 1182(h)(B), (C)(2).

The statute also establishes that the Attorney General shall not have the discretion to give such a waiver to an alien convicted of murder, torture, or an aggravated felony. 8 U.S.C. § 1182(h). Finally, "[n]o court shall have jurisdiction to review a decision of the Attorney General to grant or deny a waiver under this subsection." *Id*.

Klementanovsky's request was denied by the IJ. The IJ noted that waivers of inadmissibility under § 212(h) were previously available to applicants in exclusion proceedings and are currently available to arriving aliens in removal proceedings, as both categories of aliens are subject to the grounds of inadmissibility provided in the statute. Furthermore, the IJ noted that BIA precedent established that a waiver of inadmissibility under § 212(h) may be granted *nunc pro tunc* to retroactively cure grounds of inadmissibility at the time of entry, usually in concert with an application for an adjustment of status. *See In re Abosi*,

24 I&N Dec. 204 (BIA June 19, 2007) (reiterating that § 212(h) waivers are available either for arriving aliens or for aliens seeking adjustment of status, but applicant need not be both arriving and seeking adjustment). The IJ held that BIA precedent limits the availability of § 212(h) waivers only to proceedings where an alien seeks admission, or to circumstances where the applicant is assimilated to the same position as an alien seeking admission. Because Klementanovsky was not seeking admission or adjustment of status, but rather relief from deportation, the IJ held that his request for relief through § 212(h) was misplaced and ordered him removed.

The BIA upheld the denial of the waiver, and also added an alternate ground for denial: that "it is clear that [Klementanovsky's] convictions for robbery (and the attempt thereof), theft, and possibly intimidation/physical harm do meet the definition of an aggravated felony and would, therefore, bar the respondent from relief." R. at 7.

On appeal, Klementanovsky makes an argument that he has made from the beginning: that this interpretation of the statute denies him equal protection of the laws in violation of the due process clause of the Fifth Amendment. Specifically, he argues that "[t]he BIA's interpretation results in the disparate treatment of two classes of aliens identical in every respect except for a singular fact: members of one class happened to have departed and reentered the United States at some point after the convictions rendering them deportable." Petitioner's Br. at 12.

## II. ANALYSIS

Although the statute denies this court the jurisdiction to review a decision by the Attorney General to deny relief under § 212(h), INA § 242(a) permits courts of appeals

to consider constitutional claims and questions of law, notwithstanding any other provision of the statute. 8 U.S.C. § 1252(a)(2)(D) ("[N]othing in . . . any . . . provision of this Chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section."); *see Ramos v. Gonzales*, 414 F.3d 800, 801-02 (7th Cir. 2005). Because our review is limited to questions of law and constitutional questions, our review is *de novo. Skorusa v. Gonzales*, 482 F.3d 939, 942 (7th Cir. 2007); *see also Lara-Ruiz v. INS*, 241 F.3d 934, 939 (7th Cir. 2001).

### A. Aggravated Felony

We turn first to the question of whether Klementanovsky is an aggravated felon. If he is, then he lacks standing to raise his constitutional objections because the Attorney General would be statutorily barred from granting him the relief that he seeks regardless of whether he succeeds on his equal protection claims. The government contends that a finding by the BIA that a petitioner is an aggravated felon is a finding of fact and therefore not reviewable by this court. We disagree.

Whether an alien's criminal conviction is indeed an "aggravated felony" under the INA is a question of law that we review *de novo. Lara-Ruiz*, 241 F.3d at 938-39. An aggravated felony is defined by the statute as (among other crimes which do not apply to Klementanovsky) a crime of violence or theft "for which the term of imprisonment [is] at least one year." 8 U.S.C. §§ 1101(a)(43)(F) and (G). The statute defines "term of imprisonment" to include "the period of incarceration or confinement ordered by a court of law. . . ." 8 U.S.C. § 1101(a)(48)(B). None of Klementanovsky's convictions resulted in any prison

sentence whatsoever being ordered by a court of law. As a matter of law, Klementanovsky has not been convicted of an aggravated felony as that term is defined in the statute, and therefore the Attorney General is not statutorily barred from applying § 212(h) to his case.

### B.   The Availability of a § 212(h) Waiver to a Deportable Alien

We turn then to the heart of Klementanovsky's argument: that by drawing a line between deportable criminal aliens who have left the country and returned, and those who have stayed and applied for a § 212(h) waiver directly, Congress and the BIA have denied him his right to equal protection of the laws. We uphold federal immigration legislation that distinguishes between classes of aliens if there is any "facially legitimate and bona fide reason for its enactment." *Turkhan v. Perryman*, 188 F.3d 814, 828 (7th Cir. 1999). Under this highly deferential standard of review, if " 'any reasonably conceivable state of facts' or any 'plausible reason' could provide a rational basis for Congress' decision to treat the classes differently, our inquiry is at an end." *Lara-Ruiz,* 241 F.3d at 947 (7th Cir. 2001) (quoting *Turkhan*, 188 F.3d at 828-29).

We should note at the outset that Klementanovsky's framing of the question misses the mark on a major point. He argues that the law draws a line between those who "happened to have departed and reentered" the country and those who have not left the country and have applied for a § 212(h) waiver directly. Petitioner's Br. at 12. He characterizes this line drawing as being about his "lack of international travel." *Id*. at 13. The statute itself draws no such line. On its face, § 212(h) makes a waiver available to those aliens who have a criminal history and seek to apply or reapply for a visa, admission, or adjustment of status. 8 U.S.C. § 1182(h). The line that Congress has

drawn is between those criminal aliens who seek *to be admitted to* the United States, and those criminal aliens who are *being deported from* the United States. In the case of the former, a humanitarian waiver is available under § 212(h). In the case of the latter, Congress has conspicuously refused to include a provision for a discretionary waiver of deportability from the applicable statute. *Compare* 8 U.S.C. § 1227(a)(2)(A)(vi) (waiver of deportability available for crimes of moral turpitude only if the deportable alien has been pardoned) *with* 8 U.S.C. § 1227(a)(3)(C)(ii) (waiver of deportability available at the discretion of the Attorney General for certain crimes of immigration document fraud). The statute draws a line between those who are asking to enter the United States, and those who have already been given the opportunity to enter the United States and repaid that act by commencing a life of crime. The former can apply for a discretionary waiver of previous criminal acts, and the latter cannot. There are any number of rational grounds on which Congress could choose to draw a line between those who committed crimes before applying to enter the country (making them inadmissable) and those who have committed crimes since arriving (making them deportable).

But Klementanovsky makes a different argument by focusing on the question of international travel and the availability of relief for those who have left but not for those who have stayed. He argues that the BIA unconstitutionally applies the INA by giving preferential treatment to those who "happened to have departed and reentered" or who have engaged in "international travel" since becoming deportable. We will assume this is casual wording on his part. An alien who has been found deportable and simply "travels internationally" or departs and returns has committed an entirely different and separate federal crime which will do nothing but compound his immigration woes. If Klementanovsky were to

simply depart and return in the hopes of applying for a § 212(h) waiver, he would face a potential ten year prison term. *See* 8 U.S.C. § 1326(b) (providing a maximum ten year prison term for an alien who leaves voluntarily while a deportation order is outstanding subsequent to a conviction for a felony, and who subsequently reenters or is found inside the United States *without prior express permission* of the Attorney General).

At its heart, Klementanovsky's argument is that, having conceded deportability for a series of criminal acts, he should be allowed to apply for a waiver of inadmissability without leaving the country. It is undisputed that, if he presented himself at the border and asked for a waiver of inadmissability in order to enter and care for his parents, it would be within the discretion of the Attorney General to consider that request. He asks that the government be required to consider such a request despite the fact that he has not left and reapplied from outside the United States, arguing that this line drawing is devoid of any rational basis. We can think of plenty of rational reasons why Congress might have chosen to draw this line between criminal aliens who have left the country and those who have stayed. Congress might have wanted to ensure that dangerous people, including those convicted of crimes of moral turpitude, remain outside the United States while their applications for discretionary relief are being considered. Congress might have wanted aliens seeking such waivers to do so from outside the United States in order to discourage them from attempting to "fly under the radar" of the immigration authorities in the event that the discretionary waiver is ultimately denied. Congress might have rationalized that an alien who self-deports and returns through proper admission procedures provides immigration authorities a second bite at the apple to intercept and consider otherwise unlawful aliens. Congress might have rationalized that granting a waiver

to those who self-deport and seek readmission at the borders provides an incentive for such aliens to voluntarily depart at their own expense. In sum, we are not persuaded that there is no rational basis that might underlie such a distinction.

Klementanovsky argues that a contrary finding by our sister circuit should be persuasive. *Yeung v. INS*, 76 F.3d 337 (11th Cir. 1995). The Eleventh Circuit in *Yeung* found potential equal protection violations by the BIA distinguishing between classes of deportable aliens who have failed to depart and reenter and those who chose to self deport and reenter after a criminal conviction. The court, however, remanded the case to the BIA to allow the board to reconcile its seemingly inconsistent cases. *Id.* at 341 ("We remand the case to the Board of Immigration Appeals with instructions to reconsider its prior interpretation of § 212(h) in *[Matter of] Sanchez,* [17 I.&N. Dec. 218 (BIA 1980)], *Matter of Parodi*, 17 I.&N. Dec. 218 (BIA 1980), . . . and *Yeung* in order to make them consistent with the language of the statute itself.").

We find *Yeung* unpersuasive. First, the court in *Yeung* never fully addressed whether there is any "facially legitimate and bona fide reason" why Congress might draw a line between inadmissible and deportable aliens, preferring instead to remand the case to the BIA to reconcile internal inconsistencies. Second, in *Yeung*, the BIA's decision had held out the possibility that a § 212(h) waiver would be available for a deportee who "had departed *and returned to this country* subsequent to his conviction." *Yeung*, 76 F.3d at 338 (emphasis added). It was this disparate treatment, which allowed a deportable alien to depart, return, and then apply for a waiver, that caused the Eleventh Circuit's concern. *Id.* at 339-41. In Klementanovsky's case, the decision of the BIA conspicuously holds that the statute "preclude[s] certain aliens—

those who have not departed the United States and cannot establish eligibility for adjustment of status—from applying for relief." R. at 7. As we noted above, the statute on its face requires exactly what the BIA stated here: that a criminal alien who is not eligible for adjustment of status must leave the country before applying for a waiver. To the extent that the Eleventh Circuit's decision was based on a concern about "international travelers" receiving preferential treatment, the BIA appears to have backed away from that interpretation of the INA that previously allowed § 212(h) waivers to some aliens who had left the country and returned.

This is consistent with our circuit precedent. As we noted in *LaGuerre v. Reno*, 164 F.3d 1035, 1041 (7th Cir. 1998), there is a difference between the situation of an alien who seeks discretionary relief outside the United States and an alien who seeks discretionary relief inside the United States. We cautioned that the situation in *LaGuerre* "must not be confused with that in *Francis v. INS*, 532 F.2d 268 (2nd Cir. 1976), where the government was taking the irrational position that an alien who after coming to the United States had taken a trip abroad and returned and was then ordered deported was entitled to more consideration than one who had never taken a foreign trip after coming to the United States." *LaGuerre*, 164 F.3d at 1041. "That is different from the situation of an alien who seeks discretionary relief while he is still outside the United States." *Id*. As such, the INA treats aliens within the same criminal class differently depending on whether they are inside the country and wish to remain or have left the country and wish to return. *Turkhan*, 188 F.3d at 828. In *LaGuerre*, we found that Congress's more lenient treatment of excludable aliens has a rational basis insofar as it creates an incentive for deportable aliens to leave the country at their own expense, a result that is consistent with our holding above. *LaGuerre*, 164 F.3d at 1041.

Contrary to Klementanovsky's argument, the BIA did not imply that the waiver would have been available to an alien who was convicted, found deportable, left the country, and then returned. The BIA simply held that the waiver found at INA § 212(h) is reserved for those who are seeking admission to the country, or those who are assimilated to the position of somebody seeking admission, such as by applying for adjustment of status. This is consistent with the plain language of the statute as written, and we are able to imagine any number of rational reasons why Congress might have chosen to draw these distinctions. To the extent that the BIA once maintained a slightly different view in the case of *Yeung*, that view seems to be abandoned.

### III. CONCLUSION

Accordingly, the petition is DENIED.

A true Copy:

       Teste:

                      _____
                      *Clerk of the United States Court of*
                      *Appeals for the Seventh Circuit*