# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 2, 2011

No. 09-60386

Lyle W. Cayce
Clerk

ARNEL CABRAL,

Petitioner

v.

ERIC H. HOLDER, JR., U. S. ATTORNEY GENERAL,

Respondent

Petitions for Review of an Order of the
Board of Immigration Appeals

Before JONES, Chief Judge, and DENNIS and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Arnel Cabral, a native and citizen of the Philippines and a lawful permanent resident of the United States, petitions for review of a Board of Immigration Appeals ("BIA") decision dismissing his appeal of an Immigration Judge's ("IJ") decision ordering his removal pursuant to 8 U.S.C. § 1227(a)(2)(A)(ii) because he had been convicted of two crimes involving moral turpitude and finding him ineligible for a waiver of inadmissibility under 8 U.S.C. § 1182(h) (commonly referred to as a "§ 212(h) waiver"). Cabral argues that the BIA abused its discretion by refusing to hold his appeal in abeyance while he pursued a motion to vacate the convictions for crimes of moral turpitude in the New York state courts. He further argues that the BIA erred in

affirming the IJ's determination that he was ineligible for a § 212(h) waiver. We DENY Cabral's petition for review.

## FACTS AND PROCEEDINGS

Cabral was admitted as a lawful permanent resident in October 1992. In 1999, Cabral was convicted in New York of two counts of sexual abuse in the third degree. The Department of Homeland Security ("DHS") denied Cabral's application for naturalization in 2004 because the sexual abuse convictions rendered him unable to meet the "good moral character" requirement contained in 8 U.S.C. § 1427. DHS later charged Cabral with removability pursuant to 8 U.S.C. § 1227(a)(2)(A)(ii). Before the IJ, Cabral sought cancellation of removal under 8 U.S.C. § 1229b(a), argued that his two sexual abuse convictions formed part of a single scheme of conduct,[1] sought a § 212(h) waiver, and sought an exercise of discretion by the Attorney General to terminate the removal proceedings. The IJ found that the two offenses did not arise out of a single scheme of conduct and that Cabral was therefore deportable. The IJ also denied Cabral's requests to terminate the proceedings and cancel removal. Finally, the IJ found Cabral ineligible for a § 212(h) waiver and pretermitted consideration of Cabral's request for such waiver. Cabral appealed to the BIA. He requested that the BIA hold the proceedings in abeyance while he collaterally attacked his sexual abuse convictions in the New York state courts. The BIA rejected his request and dismissed his appeal. Cabral then timely appealed to this court and simultaneously sought reconsideration by the BIA. The BIA denied Cabral's motion for reconsideration. Cabral also appealed the BIA's second denial and

---

[1] Section 1227(a)(2)(A)(ii) provides for removal of an alien who "at any time after admission is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct." *Id.*

this court consolidated the two petitions. *See Stone v. INS*, 514 U.S. 386, 405–06 (1995).

## STANDARD OF REVIEW

We review the BIA's findings of fact for substantial evidence and its legal determinations *de novo. Zhu v. Gonzales*, 493 F.3d 588, 594 (5th Cir. 2007). "The grant of [an abeyance] lies within the sound discretion of the [BIA, which] may grant [an abeyance] for good cause shown. Accordingly, we review a decision to grant or deny [an abeyance] for an abuse of discretion."[2] *Masih v. Mukasey*, 536 F.3d 370, 373 (5th Cir. 2008) (citations omitted). "Even though we have authority to review only the BIA's decision, we may consider the IJ's decision to the extent that it influenced the BIA." *Id.*

Although we are without jurisdiction "to review a decision of the Attorney General to grant or deny a [§ 212(h)] waiver," 8 U.S.C. § 1182(h), our court has jurisdiction "to review the question of law presented by [Cabral's] challenge to the BIA's construction of § 212(h)." *Martinez v. Mukasey*, 519 F.3d 532, 541 (5th Cir. 2008) (citing 8 U.S.C. § 1252(a)(2)(D)).

## DISCUSSION

### I.    Abeyance

Cabral sought to hold his appeal before the BIA in abeyance so that he could pursue a motion to vacate the New York state convictions upon which the IJ's removability finding was based. He argues that the BIA abused its discretion in rejecting his request. The grant of an abeyance of immigration proceedings lies within the sound discretion of the BIA, which may grant an

---

[2] "[W]e cannot discern any difference in treatment between a request for a 'continuance' and a request for an 'abeyance.' Therefore, we will analyze [Cabral's] request under the more familiar continuance standard." *Masih v. Mukasey*, 536 F.3d 370, 372 n.2 (5th Cir. 2008)

abeyance upon a showing of good cause. *See Witter v. INS*, 113 F.3d 549, 555 (5th Cir. 1997). We find no abuse of that discretion here.

"[T]he BIA [does not] abuse[] its discretion so long as it is not capricious, racially invidious, utterly without foundation in the evidence, or otherwise so aberrational that it is arbitrary rather than the result of any perceptible rational approach. The BIA acts arbitrarily when it disregards its own precedents and policies without giving a reasonable explanation for doing so." *Galvez-Vergara v. Gonzales*, 484 F.3d 798, 801 (5th Cir. 2007) (quotations omitted). Cabral, who bears the burden of showing good cause, *see Bright v. INS*, 837 F.2d 1330, 1332 (5th Cir. 1988), has not shown that the BIA disregarded its own precedents and policies. The BIA determined that, under its precedent, a pending collateral attack on a conviction does not disturb the finality of the conviction for immigration purposes. *See Matter of Abreu*, 24 I. & N. Dec. 795, 802 n.8 (B.I.A. 2009) ("A pending collateral attack also does not disturb the finality of a conviction and therefore would not justify reopening of removal proceedings."); *Matter of Adetiba*, 20 I. & N. Dec. 506, 508 (B.I.A. 1992) ("the possibility of a decision on any post-conviction motion that has been filed does not affect our finding that the respondent is deportable."); *see also Okabe v. INS*, 671 F.2d 863, 865 (5th Cir. 1982) (adopting the position that "post-conviction motions do not operate to negate the finality of a conviction for deportation purposes, unless and until the conviction is overturned pursuant to such motions."). The BIA properly concluded that Cabral's "conviction remains in effect and it is speculative to conclude that the court will vacate it for reasons that remove it for immigration purposes." We hold that the BIA did not abuse its discretion in rejecting Cabral's request to hold his appeal in abeyance.

## II.    Section 212(h) Waiver

Section 212 of the Immigration and Nationality Act ("INA") allows the Attorney General, to, in his discretion, grant hardship waivers to certain classes of inadmissible aliens, including, relevant here, those like Cabral convicted of multiple crimes involving moral turpitude. 8 U.S.C. § 1182. The Attorney General may waive inadmissibility if:

> (1) (A) in the case of any immigrant it is established to the satisfaction of the Attorney General that–
>
> . . .
>
> (B) in the case of an immigrant who is the spouse, parent, son, or daughter of a citizen of the United States or an alien lawfully admitted for permanent residence if it is established to the satisfaction of the Attorney General that the alien's denial of admission would result in extreme hardship to the United States citizen or lawfully resident spouse, parent, son, or daughter of such alien;
>
> . . . and
>
> (2) the Attorney General, in his discretion, and pursuant to such terms, conditions and procedures as he may by regulations prescribe, has consented to the alien's applying or reapplying for a visa, for admission to the United States, or adjustment of status.

8 U.S.C. § 1182(h).

Cabral is deportable because any alien who "at any time after admission is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial, is deportable." 8 U.S.C. § 1227(a)(2)(A)(ii). "Although on its face the hardship waiver found in INA § 212(h)(1)(B) is only applicable to inadmissible aliens, in practice the

5

waiver is also available to deportable aliens." *Flores-Ledezma v. Gonzales*, 415 F.3d 375, 379 n.5 (5th Cir. 2005). However, aliens who are already in the United States must "apply for an adjustment of status under 8 U.S.C. § 1255; upon application, the 'applicant is assimilated to the position of an alien outside the United States seeking entry as an immigrant.'" *Jankowski-Burczyk v. INS*, 291 F.3d 172, 175 n.2 (2d Cir. 2002) (citing CHARLES GORDON ET AL., IMMIGRATION LAW AND PROCEDURE § 51.03[3] (rev. ed. 2001). The adjustment of status application "shall be the sole method of requesting the exercise of discretion under sections 212(g), (h), (i), and (k) of the Act, as they relate to the inadmissibility of *an alien in the United States.*" 8 C.F.R. § 1245.1(f) (2010) (emphasis added); *see also Matter of Abosi*, 24 I. & N. Dec. 204, 205 n.2 (B.I.A. 2007) (discussing regulation and distinguishing aliens *seeking to return* to the United States, who need not apply apply for an adjustment of status in conjunction with a § 212(h) waiver request). The BIA properly determined that because Cabral was an alien inside the United States who had not filed a concurrent application for adjustment of status under § 1255, he was ineligible to apply for a § 212(h) waiver.[3]

Cabral first argues that a § 212(h) waiver may stand alone and that an alien present in the United States need not concurrently apply for an adjustment of status. He contends that 8 U.S.C. § 1101(a)(13) defines an alien seeking admission for purposes of the INA, including a § 212(h) waiver, and that that statute makes no distinction between aliens inside and outside the United States. Section 1101(a)(13) provides:

---

[3] The BIA additionally determined that "since [Cabral] does not have an immigrant visa immediately available to him, he is not eligible to apply for adjustment of status" under 8 U.S.C. § 1255(a).

(A) The terms "admission" and "admitted" mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer.

(B) An alien who is paroled under section 1182(d)(5) of this title or permitted to land temporarily as an alien crewman shall not be considered to have been admitted.

(C) An alien lawfully admitted for permanent residence in the United States shall not be regarded as seeking an admission into the United States for purposes of the immigration laws unless the alien–

　　(i) has abandoned or relinquished that status,

　　(ii) has been absent from the United States for a continuous period in excess of 180 days,

　　(iii) has engaged in illegal activity after having departed the United States,

　　(iv) has departed from the United States while under legal process seeking removal of the alien from the United States, including removal proceedings under this chapter and extradition proceedings,

　　(v) has committed an offense identified in section 1182(a)(2) of this title, unless since such offense the alien has been granted relief under [section 212(h)] or 1229b(a) of this title, or

　　(vi) is attempting to enter at a time or place other than as designated by immigration officers or has not been admitted to the United States after inspection and authorization by an immigration officer.

*Id.* Cabral relies upon § 1101(a)(13)(C)(v), which states that an alien lawfully admitted for permanent residence "shall not be regarded as seeking an admission into the United States for purposes of the immigration laws" unless

7

that alien has committed certain delineated offenses *Id.* Cabral reasons that once an alien commits one of the delineated crimes, § 1101(a)(13)(C)(v) mandates that he be considered seeking admission; accordingly, Cabral argues, such an alien may avail himself of a § 212(h) waiver.

This argument is utterly without merit. Cabral selectively quotes subparagraph (a)(13)(C)(v), yet conveniently omits any mention of subparagraph (a)(13)(A). That subparagraph makes clear that "[t]he terms 'admission' and 'admitted' mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). Section 1101(a)(13) "governs the status of [lawful permanent residents] returning to the United States from a trip abroad." *Onwuamaegbu v. Gonzales*, 470 F.3d 405, 410 (1st Cir. 2006). Cabral was already lawfully present in the United States; he was not "seeking an admission"—defined as "the lawful entry . . . into the United States," § 1101(a)(13)(A)—"for purposes of the immigration laws." § 1101(a)(13)(C). *See Matter of Rosas-Ramirez*, 22 I. & N. Dec. 616, 620 (B.I.A. 1999) (discussing § 1101(a)(13) and noting that "lawful permanent residents who are returning to the United States are not generally treated as seeking admission because they are treated as having already been admitted in the past."); *Malagon de Fuentes v. Gonzales*, 462 F.3d 498, 508 (5th Cir. 2006) (noting that § 1101(a)(13) "effectuates Congress' goal of allowing [lawful permanent residents] some freedom to travel in and out of the country."). Accordingly, we reject Cabral's argument based upon the statutory text of § 1101(a)(13).

Cabral also argues that the BIA's interpretation of § 212(h) denies him his right to equal protection of the laws under the Fifth Amendment by "drawing a line between deportable criminal aliens who have left the country and returned, and those who have stayed and applied for a § 212(h) waiver directly."

8

*Klementanovsky v. Gonzales*, 501 F.3d 788, 791 (7th Cir. 2007). "In light of Congress's plenary power to pass legislation concerning the admission or exclusion of aliens, it is clear that no more searching review than that of rational basis is appropriate." *Madriz-Alvarado v. Ashcroft*, 383 F.3d 321, 332 (5th Cir. 2004); *see, e.g., Fiallo v. Bell*, 430 U.S. 787, 792 (1976) ("[T]he power to expel or exclude aliens . . . [is] a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.") (citation and internal quotation marks omitted). "Under rational basis review, differential treatment 'must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Madriz-Alvarado*, 383 F.3d at 332 (citing *FCC v. Beach Comms.*, 508 U.S. 307, 313 (1993)).

In *Klementanovksy*, the Seventh Circuit confronted a nearly identical scenario to the one presented in this case. Klementanovksy was placed in removal proceedings and charged with deportability under both 8 U.S.C. § 1227(a)(2)(A)(i)(II) (conviction of a crime involving moral turpitude for which a sentence of one year or more may be imposed), and under 8 U.S.C. § 1227(a)(2)(A)(ii) (conviction of multiple crimes involving moral turpitude). *Klementanovksy*, 501 F.3d at 790. Before the IJ, Klementanovksy sought a § 212(h) waiver. *Id.* The IJ denied Klementanovksy's request for a waiver, holding that "BIA precedent limits the availability of § 212(h) waivers only to proceedings where an alien seeks admission, or to circumstances where the applicant is assimilated to the same position as an alien seeking admission [by seeking an adjustment of status]," and the BIA affirmed. *Id.* On appeal, Klementanovksy argued that the BIA's interpretation of the statute denied him

9

equal protection of the laws in violation of the due process clause of the Fifth Amendment. *Id.*

The Seventh Circuit denied Klementanovksy's petition, noting that the statute draws a line between "those criminal aliens who seek *to be admitted* to the United States, and those criminal aliens who are *being deported from* the United States." *Id.* at 792. The court noted that there "plenty" of rational reasons that might underlie the distinction:

> Congress might have wanted to ensure that dangerous people, including those convicted of crimes of moral turpitude, remain outside the United States while their applications for discretionary relief are being considered. Congress might have wanted aliens seeking such waivers to do so from outside the United States in order to discourage them from attempting to "fly under the radar" of the immigration authorities in the event that the discretionary waiver is ultimately denied. Congress might have rationalized that an alien who self-deports and returns through proper admission procedures provides immigration authorities a second bite at the apple to intercept and consider otherwise unlawful aliens. Congress might have rationalized that granting a waiver to those who self-deport and seek readmission at the borders provides an incentive for such aliens to voluntarily depart at their own expense.

*Id.* at 792–93; *see also Montano v. Attorney Gen. of the United States*, 350 F. App'x 643, 647 (3d Cir. 2009) (adopting "the Seventh Circuit's rationale in *Klementanovksy* as sound" and finding no equal protection violation of petitioner who challenged distinction between persons who have left the country and returned and those who have stayed and applied for a § 212(h) waiver directly).

Cabral relies heavily on *Francis v. INS*, where the Second Circuit held that the BIA's interpretation of the former § 212(c) deprived the petitioner of equal protection where it rendered him ineligible for discretionary waiver by virtue of conviction for a drug offense. 532 F.2d 268, 273 (2d. Cir. 1976). Under the former § 212(c), the Attorney General could grant a discretionary waiver of

many § 212(a) grounds of excludability for "[a]liens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years." *Id.* at 270. The Second Circuit held that there was no rational basis for the availability of § 212(c) relief for deportable aliens attempting to enter the United States and not for deportable aliens present in the United States and that the provision therefore violated the Equal Protection Clause. *Id.* at 272–73.

"Even if *Francis* were on point statutorily and retained its force in light of subsequent amendments, the case is of no aid to Petitioner. . . . [T]his Circuit has refused to extend the meaning of *Francis* to the distinction between aliens being deported and those being excluded, which is at issue here." *Maragon de Fuentes*, 462 F.3d at 505. In *Requena-Rodriguez*, we addressed§ 212(c) in the context of the Antiterrorism and Effective Death Penalty Act and found it did not violate petitioner's right to equal protection when there was a rational basis for distinguishing between aliens being deported and those being excluded. 190 F.3d 299, 309 (5th Cir. 1999). Citing *LaGuerre v. Reno*, 164 F.3d 1035, 1041 (7th Cir. 1998), this court stated that the "more lenient treatment of excludable as distinct from deportable aliens" reflected Congress' desire to provide an "incentive for deportable aliens to leave the country . . . without their having to be ordered to leave at the government's expense." *Requena-Rodriguez*, 190 F.3d at 309.

"Under rational basis review, differential treatment must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Madriz-Alvarado*, 383 F.3d at 332 (quotations omitted). We need not belabor the

11

point. As set forth in *Klementanovksy,* 501 F.3d at 792–93, and *Requena-Rodriguez*, 190 F.3d at 309, Congress may have had any number of reasons to make the distinction it did. Accordingly, we reject Cabral's argument that § 212(h) violates his right to equal protection of the laws.

## CONCLUSION

For the reasons set forth above, we DENY Cabral's petition for review.