[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-13069

_____

Agency No. A046-569-593

GIOVANNY RIVAS,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(September 3, 2014)

Before WILSON, PRYOR and ROSENBAUM, Circuit Judges.

PRYOR, Circuit Judge:

This petition for review requires us to decide whether a deportable alien who

has left and reentered the United States may obtain *nunc pro tunc* a waiver of

inadmissibility. *See* Immigration and Nationality Act § 212(h), 8 U.S.C. § 1182(h).

The State of Florida twice convicted petitioner Giovanny Rivas of petit larceny, which rendered him removable. But before the Department of Homeland Security initiated removal proceedings, Rivas left the United States and then reentered on three separate occasions without notifying border officials of his ineligibility to reenter. After the Department initiated removal proceedings, an immigration judge granted Rivas a waiver of inadmissibility, 8 U.S.C. § 1182(h), based on *Matter of Sanchez*, 17 I. & N. Dec 218 (BIA 1980) (holding that a waiver is retroactively available if an alien could have received one when seeking reentry at the border but who now seeks one from within the United States). When the Department appealed, the Board of Immigration Appeals interpreted the waiver provision, 8 U.S.C. § 1182(h), which Congress amended after the Board decided *Matter of Sanchez*, to require that an alien seek a waiver of inadmissibility when he applies for a visa, admission to the United States, or an adjustment of status. The Board ordered Rivas removed on the ground that he failed to file an application for an adjustment of status concurrently with his application for a waiver. Because that interpretation of the waiver provision, as amended, was reasonable, we deny Rivas's petition for review.

## I. BACKGROUND

Rivas is a native and citizen of Colombia, but he has continuously resided in the United States after receiving lawful permanent resident status in 1998. The

2

State of Florida convicted him first in January 2001 and again in July 2001 for petit larceny. He then left the United States three times and later reentered the country on May 12, 2004, April 3, 2005, and June 23, 2006. Each time Rivas returned to the United States through the Miami International Airport, the border officers neither detained nor questioned him.

In December 2007, Rivas applied for United States citizenship, but the Department of Homeland Security denied his application based on his criminal convictions. The Department then initiated removal proceedings because Florida convicted Rivas of two crimes involving moral turpitude that did not arise out of a single scheme of criminal misconduct after his lawful admission to the United States. *See* 8 U.S.C. § 1227(a)(2)(A)(ii). The Department served Rivas with a notice to appear at a removal hearing.

At the hearing Rivas conceded his removability, but filed an application for a waiver of inadmissibility, 8 U.S.C. § 1182(h), on the ground that he could have applied for a waiver when he sought reentry to the United States. *See Sanchez*, 17 I. & N. Dec 218. The Department moved to deny Rivas's request for a waiver and argued that the waiver provision requires an alien to seek a visa, admission to the United States, or adjustment of status when he files for a waiver. Rivas responded that, based on *Matter of Sanchez*, 17 I. & N. Dec. 218 (BIA 1980), the immigration court could grant a waiver on a *nunc pro tunc* basis. In *Sanchez*, the Board held

3

that a "waiver of the ground of inadmissibility may be granted in a deportation proceeding when, at the time of the alien's last entry, he was inadmissible because of the same facts which form the basis of his deportability." 17 I. & N. Dec. at 223 (quoting *Matter of Tanori*, 15 I & N. Dec. 566, 568 (BIA 1976)). The immigration judge agreed with Rivas and granted him a waiver, 8 U.S.C. § 1182(h), after concluding that Rivas's removal would result in extreme hardship to his parents. The Department appealed to the Board of Immigration Appeals.

The Board agreed with the Department "that since the statute does not provide for a 'stand alone' waiver . . . without an application for adjustment of status, granting a waiver nunc pro tunc would violate the plain language of the statute and the intent of Congress." *Matter of Rivas*, 26 I. & N. Dec. 130, 134 (BIA 2013). The Board concluded that Congress had abrogated its interpretation in *Matter of Sanchez*: "Our precedent issued prior to the 1990 and 1996 amendments to section 212(h), including *Matter of Sanchez*, is therefore no longer valid." *Id.* And the Board vacated the decision of the immigration judge because "[s]ection 212(h), as amended, does not permit an alien in the respondent's situation to apply for a waiver given his ineligibility for adjustment of status." *Id.* at 134– 35.

The Board based its decision on the text of the statute, the amendments to the text, and the decisions of the court of appeals, including our Court. Congress had amended the waiver provision in 1990 to provide for a waiver of

inadmissibility if the alien concurrently applied "for a visa, for admission to the United States, or adjustment of status." 8 U.S.C. § 1182(h)(2) (Supp. II 1990). The earlier version provided for a waiver if the "Attorney General . . . has consented to the alien's applying or reapplying for a visa and for admission to the United States." 8 U.S.C. § 1182(h) (1988). The Board explained that another statute, the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, Div. C, § 348, 110 Stat. 3009-546, 3009-639, further limited the ability of certain lawful permanent residents to seek a waiver of inadmissibility. *Rivas*, 26 I. & N. Dec. at 131 n.1. The Board next stated that its "long-standing approach to defining the limits of section 212(h) relief has been affirmed by the courts of appeals as a reasonable construction of the statutory provisions." *Id.* at 132; *see Poveda v. U.S. Att'y Gen.*, 692 F.3d 1168 (11th Cir. 2012); *Cabral v. Holder*, 632 F.3d 886 (5th Cir. 2011); *Klementanovsky v. Gonzales*, 501 F.3d 788 (7th Cir. 2007). In particular, the Board relied on our decision in *Poveda*, 692 F.3d 1168, for the proposition that a "stand-alone" waiver of inadmissibility is not available to an alien in a removal proceeding. *Rivas*, 26 I. & N. Dec. at 132.

The Board acknowledged that it had historically allowed for *nunc pro tunc* relief in the context of certain waiver applications, but that the Supreme Court found its approach problematic because it created a peculiar asymmetry. For example, "deportable aliens who had traveled abroad and returned" could receive

5

another kind of waiver, Immigration and Nationality Act § 212(c), 8 U.S.C.

§ 1182(c) (1994), which has since been repealed, "while those who had never left

could not." *Id.* at 133 (quoting *Judulang v. Holder*, ___ U.S. ___, ___, 132 S. Ct.

476, 480 (2011)). The Board concluded that granting *nunc pro tunc* relief failed to

afford the equal protection of the law because it distinguished between aliens based

on international travel. *Id.* at 133–34. And it agreed with both our Court and the

Seventh Circuit that "Congress could rationally distinguish between aliens who

seek to be readmitted to the United States, such as the alien in *Matter of Abosi*, and

those, like the respondent, who are in the country following a lawful admission but

who are removable because they subsequently violated our criminal laws." *Id.* at

134. The Board held that the waiver provision, as amended, does not permit an

alien to apply for a waiver of inadmissibility unless he concurrently applies for an

adjustment of status. Accordingly, the Board sustained the appeal by the

Department, vacated the decision of the immigration judge, and ordered Rivas

removed from the United States. *Id.* at 135.

## II. STANDARDS OF REVIEW

We review only the decision of the Board of Immigration Appeals, except to

the extent that the Board "expressly adopts the [immigration judge's] opinion."

*Nreka v. U.S. Att'y Gen.*, 408 F.3d 1361, 1368 (11th Cir. 2005). "Although we lack

jurisdiction to review a decision of the Attorney General to grant or deny a waiver,

8 U.S.C. § 1182(h), we have jurisdiction to review the legal question of whether [an alien] is statutorily eligible to apply for a . . . waiver." *Poveda*, 692 F.3d at 1172 (internal quotation marks omitted).

We ordinarily review questions of statutory interpretation *de novo*, but we apply a two-step test to review an agency interpretation of a statute that the agency administers. *De Sandoval v. U.S. Att'y Gen.*, 440 F.3d 1276, 1278 (11th Cir. 2006); *see Chevron U.S.A., Inc. v. Natural Resource Defense Counsel, Inc.*, 467 U.S. 837, 104 S. Ct. 2778 (1984). We must first determine whether "Congress has directly spoken to the precise question at issue." *De Sandoval*, 440 F.3d at 1279 (quoting *Chevron*, 467 U.S. at 842, 104 S. Ct. at 2781). If Congress clearly expressed its purpose and the interpretation of the agency conflicts with that express purpose, then we must set aside the agency interpretation. *Id.* But if Congress has not directly addressed the issue or if the meaning of the statute is ambiguous, we must decide whether the interpretation by the agency is based on a permissible construction of the statute. *Id.* "To uphold an agency's statutory interpretation, we 'need not conclude that the agency construction was the only one it permissibly could have adopted, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding.'" *Id.* (alteration omitted) (quoting *Chevron*, 467 U.S. at 843 n.11, 104 S. Ct. at 2782 n.11). "[W]e will defer to the Board's interpretation of a statute if it is reasonable and does not contradict

7

the clear intent of Congress." *Poveda*, 692 F.3d at 1172 (alteration and internal quotation marks omitted). And "judicial deference to the Executive Branch is especially appropriate in the immigration context." *Immigration & Naturalization Serv. v. Aguirre-Aguirre*, 526 U.S. 415, 425, 119 S. Ct. 1439, 1445 (1999).

"We review constitutional challenges . . . *de novo*." *Lapaix v. U.S. Att'y Gen.*, 605 F.3d 1138, 1143 (11th Cir. 2010). Classifications of immigrants, including those in section 212 of the Immigration and Nationality Act, are subject to minimal scrutiny. *Poveda*, 692 F.3d at 1172. "Under the rational basis standard, the [alien] bears the burden of establishing that the government regulation is arbitrary or unreasonable[] and not rationally related to the government's purpose." *Yeung v. Immigration & Naturalization Serv.*, 76 F.3d 337, 339 (11th Cir. 1995).

### III. DISCUSSION

Our Court has already concluded that the waiver provision "is silent about whether an alien within our borders may obtain a hardship waiver without concurrently applying for an adjustment of status," and we ruled in *Poveda* that "[t]he new interpretation by the Board of [that provision]—that an alien within the United States must apply for an adjustment of his status to receive a hardship waiver—is reasonable." 692 F. 3d at 1176. In *Poveda*, we considered "whether a removable alien [was] eligible for a waiver of inadmissibility . . . if he remain[ed] within the United States, but fail[ed] to apply for an adjustment of his status." *Id.* at

8

1171. We concluded that he was ineligible for a waiver and held that the interpretation by the Board that "an alien must submit an application for a . . . waiver [of inadmissibility] concurrently with an application for a visa, admission, or adjustment of status" was reasonable. *Id.* at 1176 (internal quotation marks omitted).

Rivas argues that his reentries to the United States distinguish him from the petitioner in *Poveda*, but his argument fails. To be sure, unlike Poveda, Rivas left and returned to the United States after committing the crimes that subjected him to removal. But the interpretation of the statute by the Board is reasonable in the light of the statutory amendments, even as applied to Rivas. *See Cabral*, 632 F.3d 886; *Klementanovsky*, 501 F.3d 788. We reject Rivas's invitation for us to reinstate the *Sanchez* exception, which the Board abandoned after the intervening amendments to the statute.

The interpretation by the Board comports with the regulation governing an application for a waiver of inadmissibility. *See* 8 C.F.R. § 1245.1(f). That regulation provides that, for aliens who apply for a hardship waiver while within the United States, an application for an adjustment of status "shall be the *sole* method of requesting the exercise of discretion under sections 212(g), (h), (i), and (k) of the Act, as they relate to the inadmissibility of an alien *in the United States*." *Id.* (emphasis added). Although Rivas could have sought a waiver when he

9

reentered, we examine only what he has indeed sought—a waiver from within the United States, which he may obtain solely in conjunction with an application for an adjustment of status.

Rivas argues that the Board provided no justification for disrupting long-settled precedent in *Sanchez* regarding *nunc pro tunc* waivers, that there is no rational basis for distinguishing between inadmissible and deportable aliens in removal proceedings, and that its new interpretation of the waiver provision invites arbitrary and capricious agency action, but we disagree. The statutory amendment alone serves as a sufficient basis for overruling *Sanchez*. *See Margulis v. Holder*, 725 F.3d 785, 788–89 (7th Cir. 2013) (explaining that the decision in *Rivas* "was based on a statutory interpretation" of the waiver provision). And we agree with the Attorney General that the interpretation by the Board adheres to the text of the statute. To allow a *nunc pro tunc* waiver to a removable alien who has not concurrently filed adjustment of status application would render Congress's recent addition of the "adjustment of status" language superfluous. That interpretation also avoids the equal protection concerns that our Court expressed in *Yeung*, 76 F.3d at 340, because the availability of the waiver now turns on whether the alien seeks admission from outside the United States or an exemption from removal from within the United States.

10

Contrary to Rivas's argument that no rational basis exists for overruling *Sanchez*, we explained in *Poveda* that Congress and the Board had at least five rational bases for drawing this classification between aliens. First, "'Congress might have wanted to ensure that dangerous people, including those convicted of crimes, remain outside the United States while their applications for discretionary relief are being considered.'" 692 F.3d at 1177–78 (quoting *Cabral*, 632 F.3d at 893). Second, Congress might have wanted to deter these aliens "from attempting to fly under the radar" in the event that their waivers are ultimately denied. *Id.* (quoting *Cabral*, 632 F.3d at 893) (internal quotation marks omitted). Third, Congress might have believed it created an incentive for aliens to self-deport at their own expense. *Id.* (citing *Cabral*, 632 F.3d at 893; *Klementanovsky*, 501 F.3d at 793). Fourth, "in cases where an alien either remains outside our borders or applies for an adjustment of status while within our borders, the alien must provide immigration authorities with information about his whereabouts and 'immigration authorities gain a second bite at the apple to intercept and consider otherwise unlawful aliens.'" *Id.* (alteration omitted) (quoting *Cabral*, 632 F.3d at 893). Fifth, Congress might have wanted to punish lawful permanent residents who "repaid" that status with "a life of crime" and to require "them to self-deport before the Attorney General considers their request for a hardship waiver." *Id.* (quoting *Klementanovsky*, 501 F.3d at 792) (internal quotation marks omitted). Our review

11

of the interpretation of the Board "is not a license for [us] to judge the wisdom, fairness, or logic of legislative choices." *F.C.C. v. Beach Commc'n, Inc.*, 508 U.S. 307, 313, 113 S. Ct. 2096, 2101 (1993). These reasons satisfy our limited review for a rational basis.

Rivas also argues that *Matter of Abosi*, 24 I. & N. Dec. 204 (BIA 2007), supports his argument, but *Abosi* illustrates the reasonable distinction adopted by the Board. The Board ruled in *Abosi* that a deportable alien seeking readmission after a trip abroad need not apply for an adjustment of status in conjunction with his waiver request because he sought admission from *outside* the United States. *Id.* at 205–06. But Rivas never sought a waiver from outside the United States when seeking admission; he sought a waiver after he had illegally reentered the United States without detection by customs agents. For the reasons earlier delineated, Congress and the Board may have many rational reasons for treating Rivas differently from the petitioner in *Abosi*. Indeed, if we were to accept the position of Rivas, we would revert to "the irrational position that an alien who after coming to the United States had taken a trip abroad and returned and was then ordered deported was entitled to more consideration than one who had never taken a foreign trip after coming to the United States." *Klementanovsky*, 501 F.3d at 793–94 (describing the circumstances in *Francis v. INS*, 532 F.2d 268 (2d Cir. 1976)).

# IV. CONCLUSION

We **DENY** Rivas's petition for review.