MARTIN, Circuit Judge,
dissenting:
I respectfully dissent. The majority states that the BIA has abandoned its previous interpretation of section 212(h) of the INA, 8 U.S.C. § 1182(h), one which was held unconstitutional in Yeung v. INS, 76 F.3d 337, 341 (11th Cir.1995).[1] I am not convinced, however, that the BIA has acquiesced to our prior ruling. To the contrary, the BIA applied essentially the same framework that we found problematic in Yeung to Mr. Poveda, thus precluding him from seeking a hardship waiver under section 212(h). Because this BIA decision conflicts with our prior precedent, I would grant Mr. Poveda’s petition for review, vacate the BIA’s order, and remand for further proceedings consistent with Yeung.
I.
As this Court observed in Yeung, the BIA precedent that delineates the availability of the section 212(h) waiver draws an important distinction between aliens who travel abroad following a conviction and those who do not. See id. at 339-41. Aliens who leave the United States and who are subject to deportation after they return are automatically eligible for the waiver, regardless of whether they face a charge of inadmissibility. See Matter of Sanchez, 17 I. & N. Dec. 218, 222-23 (BIA 1980).[2] In other words, aliens who travel abroad following them conviction and who then face deportation can seek the waiver, even if they need not overcome a ground of inadmissibility during their removal proceeding. See id. Aliens who have returned from travel abroad also need not apply for adjustment of status in order to be considered for the section 212(h) waiver. See, e.g., Matter of Balao, 20 I. & N. Dec. 440, 446 (BIA 1992).
*1181 By ' contrast, aliens who do not travel abroad following a conviction are not automatically eligible for the waiver. Indeed, these aliens cannot seek the waiver unless they also apply for, and are otherwise eligible for, adjustment of status. See Matter of Parodi, 17 I. & N. Dec. 608, 611-12 (BIA 1980) (noting that the waiver can be granted to these aliens “in conjunction with adjustment of status”); Matter of Bernabella, 13 I. & N. Dec. 42, 43-44 (BIA 1968) (holding that an alien could not seek the waiver because he was not otherwise eligible for adjustment of status). Thus, in the case of an alien who does not travel overseas following a conviction, and who cannot otherwise seek adjustment of status, the section 212(h) waiver is simply not available as a form of relief. See Bernabella, 13 I. & N. Dec. at 43-44; see also Parodi, 17 I. & N. Dec. at 612.
The upshot is that, under BIA precedent, whether an alien who is subject to deportation is eligible for a waiver under section 212(h) largely hinges on whether he has traveled abroad after his conviction. Specifically, an alien who cannot otherwise seek an adjustment of status — but who has made a trip overseas — is eligible for the waiver. In contrast, an alien who cannot otherwise seek an adjustment of status— and who has not traveled abroad — is not eligible for relief.
In Yeung, the BIA applied this framework and held that the alien, Mr. Po, could not seek a section 212(h) waiver. See 76 F.3d at 338. According to the BIA, Mr. Po was not eligible for this kind of relief because he “(1) could not file for an adjustment of status, and (2) had not demonstrated that he had departed and returned to the United States” following his conviction. Id. Before this Court, Mr. Po argued that the BIA’s decision violated the equal protection of the laws, and we agreed. See id. at 339-41. We concluded that the BIA’s decision to distinguish between aliens who had traveled abroad and those who had not was “arbitrary.” Id. at 340. Precluding an alien, like Mr. Po, of the chance to seek the hardship waiver “simply by virtue of his failure to depart and reenter” was impermissible. Id.
In Yeung, we remanded the matter to the BIA for it to reconsider its precedent, see id. at 341, but as far as I can tell, the BIA has not done so. Here, in concluding that Mr. Poveda was not eligible for the hardship waiver under section 212(h), the BIA emphasized that he had not “left and re-entered the United States” following his offense. And, in summarizing its analysis, the BIA reiterated that Mr. Poveda was not “a returning lawful permanent resident.” This is the same framework we found to be a problem in Yeung.
I recognize that in this case, the BIA did not explicitly say that Mr. Poveda was ineligible for adjustment of status. It merely noted that he had not applied for adjustment of status. However, I do not understand the BIA to have thereby adopted the rule — contrary to its precedent — that an alien can seek a section 212(h) waiver by. merely filing an application for adjustment of status, even if that alien is not otherwise eligible for adjustment of status. See, e.g., Bernabella, 13 I. & N. Dec. at 43-44; see also Parodi, 17 I. & N. Dec. at 611-12. And here, it is undisputed that Mr. Poveda could not have sought adjustment of status.[3]
Thus, like Mr. Po, Mr. Poveda was rendered ineligible for the section 212(h) waiver “simply by virtue of his failure to depart *1182 and reenter” the United States. Yeung, 76 F.3d at 340. As in Yeung, the BIA’s analysis here reflects a critical distinction between aliens who have “departed and returned to this country at some point after they became deportable” and those “whose fate has not led them to sojourn.” Id. at 341. It is evident that, had Mr. Poveda traveled abroad after his conviction and then returned to the United States, the BIA would have deemed him eligible for the section 212(h) waiver. In view of our decision in Yeung, which rejected this framework, I do not think the BIA’s ruling in Mr. Poveda’s case can stand.
II.
The majority sets aside Mr. Poveda’s claim on the ground that the BIA has abandoned the framework that it previously espoused. See Majority Op. at 1173, 1174. Specifically, the majority says that the BIA “now construes section 212(h) to allow only those who seek readmission from outside of our borders or those within our borders who apply for an adjustment of status to obtain a hardship waiver.” Id. at 1174. The majority thus suggests that the key distinction is between 1) aliens who are seeking admission or otherwise assimilated to the position of those who are seeking admission and 2) aliens who are not. See id. at 1177.[4] What matters now, the majority indicates, is whether an alien is formally or functionally seeking admission. See id.
I cannot agree because this view fails to take into account governing BIA precedent and ignores a critical aspect of the BIA’s actual analysis in Mr. Poveda’s case, which applied that precedent. As set out above, the section 212(h) waiver is available to aliens who travel abroad following a conviction and who are then subject to deportation following their return to the United States because of their conviction, and not their inadmissibility. See Sanchez, 17 I. & N. Dec. at 222-23. Also, aliens who meet this description need not apply for adjustment of status to receive the waiver. See Balao, 20 I. & N. Dec. at 446. However, these aliens cannot be described as ones who are seeking admission or ones who are essentially in that same position.
To begin, these aliens cannot be said to be seeking admission because they are already back in the United States and they are not charged with inadmissibility at the time of reentry. Likewise, these aliens cannot be said to be assimilated to the position of those who are seeking admission because they are not applying for adjustment of status. So, contrary to what the majority suggests, there are some aliens who are neither seeking admission nor otherwise assimilated to the position of aliens seeking admission whom the BIA treats as eligible for the section 212(h) waiver. These are aliens who have traveled abroad. See Sanchez, 17 I. & N. Dec. at 222-23.
The BIA applied the reasoning set forth in this precedent to Mr. Poveda’s case. In rejecting Mr. Poveda’s claim of eligibility, the BIA emphasized that he had not “left and re-entered the United States” and that, as such, he was not “a returning lawful permanent resident.” This reflects the continuing application of BIA precedent, which allows an alien who has traveled abroad and who is then subject to deportation to seek the section 212(h) *1183 waiver, even when his admissibility is not at issue and even in the absence of an application for adjustment of status. See Balao, 20 I. & N. Dec. at 446; Sanchez, 17 I. & N. Dec. at 222-23. For these reasons, and unlike the majority, I cannot say that the BIA has abandoned the framework that we rejected in Yeung.
III.
The majority states that I have “misunderst[ood] the current state of the governing law” because I have “ignore[d]” changes instituted by IIRIRA. Majority Op. at 1174, 1176. But the majority never explains how any of the IIRIRA provisions it cites had the effect of changing the BIA precedent which led to denial of relief for Mr. Poveda.
The majority accurately says that, prior to IIRIRA, Congress provided for two types of proceedings — exclusion and deportation — and that whether an alien was subject to one type of proceeding or another depended on whether he had made an “entry” into the United States. Id. at 1174. IIRIRA replaced the term “entry” with the term “admission,” see 8 U.S.C. § 1101(a)(13)(A), grounds of “exclusion” became grounds of “inadmissibility,” see id. § 1182, and a unified proceeding — a removal proceeding — was instituted for determining both inadmissibility and deport-ability, see id. § 1229a(a).
But with regard to these changes implemented by IIRIRA, the majority fails to explain how they detract from the BIA precedent at issue here. Although these changes in the law are important, they do not affect the substance of the BIA’s decision in Sanchez, which allows an alien who has traveled abroad, returns to the United States, and is then charged with deportability based on a conviction to seek a section 212(h) waiver. See 17 I. & N. Dec. at 222-23. As shown by Mr. Poveda’s case, the BIA, in keeping with Sanchez, continues to inquire into whether a deportable alien has previously “left and re-entered the United States.”
The majority also points out that, in the course of defining “admission,” IIRIRA provided, in general, that lawful permanent resident aliens who travel abroad and who then seek to reenter the United States are not considered applicants for admission. See 8 U.S.C. § 1101(a)(13)(C). The majority is quite correct that IIRIRA carved out an exception to this rule. In general, a lawful permanent resident who has committed an offense that renders him inadmissible should seek admission upon his return from a trip abroad. See id. § 1101(a)(13)(C)(v).
But the majority then goes astray when it asserts that, in light of these IIRIRA provisions, lawful permanent residents who have a conviction, travel abroad, and then return to the United States will only be “subject to grounds of inadmissibility.” Majority Op. at 1175. The majority seems to imply that such lawful permanent residents cannot, or otherwise will not, be subject to deportation on the basis of their conviction, and that as a result, there are no lawful permanent residents who would seek to avail themselves of the rule under Sanchez in order to obtain the section 212(h) waiver. See id.
The majority’s argument will no doubt confound the BIA and immigration enforcement officials. Indeed, contrary to what the majority suggests, there are some permanent resident aliens who travel abroad and who are then subject to deportation based on their conviction, rather than their inadmissibility at the time of reentry. See, e.g., Matter of Nelson, 25 I. & N. Dec. 410, 410-11, 415 (BIA 2011) (alien became lawful permanent resident in 1994, was convicted in 1999 of a drug offense, traveled abroad and returned to the United States in 2000, and was subject *1184 to deportation based in part on the 1999 conviction, and not his inadmissibility at the time of reentry).
In other words, contrary to what the majority appears to believe, lawful permanent residents who have a prior conviction, travel abroad, and then return to the United States can be subject to deportation based on either their inadmissibility at the time of reentry, see Matter of Casillas-Topete, 25 I. & N. Dec. 317, 317-18 (BIA 2010), or their conviction alone, see Nelson, 25 I. & N. Dec. at 410-11, 415. The majority provides no authority to substantiate its position that these permanent resident aliens can be subject to deportation only because of their inadmissibility, and not because of their conviction.
The result is that, even under IIB.IRA, there are some lawful permanent residents who commit an offense, travel abroad, and are then placed in removal proceedings where their inadmissibility is simply not at issue. These are permanent resident aliens who are subject to deportation based on their conviction, and not their inadmissibility. See Nelson, 25 I. & N. Dec. at 410-11, 415. And as I have explained, the BIA’s decision in Sanchez allows these lawful permanent residents to seek the section 212(h) waiver. See 17 I. & N. Dec. at 222-23.
I certainly recognize that, in practice, the general rule that lawful permanent residents who have convictions that render them inadmissible and who travel abroad must seek readmission may make it less likely that these aliens can reenter the United States with permission, such that it would then be possible for them to be subject to deportation. More simply put, the provision may reduce the number of aliens who would seek to avail themselves of the rule under Sanchez. But it does not entirely eliminate that group of aliens, and under Sanchez, they would be eligible for the section 212(h) waiver by virtue of having traveled abroad. See id.
The majority complains that I do not cite a case decided by the BIA after 1996 that states that an alien may receive a waiver under section 212(h) without applying for admission or for an adjustment of status. See Majority Op. at 1175-76. But, as the BIA’s governing regulations make clear, its precedent remains binding until and unless it is modified or overruled. See 8 C.F.R. § 1003.1(g). And the majority points to no authority to demonstrate that the BIA has overruled its prior precedent.[5] More to the point, the BIA’s analysis in *1185 Mr. Poveda’s case makes it clear that the BIA continues to adhere to Sanchez — that is, the BIA continues to apply the rule that an alien who has traveled abroad and who is then subject to deportation based on his conviction can seek the section 212(h) waiver, even though his inadmissibility is not at issue and even in the absence of an application for adjustment of status. See 17 I. & N. Dec. at 222-23. If the majority wants a post-1996 BIA case that reflects this principle, then it need not look any further than the case of Mr. Poveda himself.[6]
This brings me to a related and final point. Even if I were to accept the majority’s reading of IIRIRA, i.e., that it has rendered BIA precedent “no longer tenable,” Majority Op. at 1174, it is clear that the BIA itself has not recognized this. Indeed, all one needs to do is to look at the BIA’s actual analysis in Mr. Poveda’s case to see that the BIA has not concluded that its prior precedent has been called into doubt by the changes cited by the majority. What the BIA did in Mr. Poveda’s case is the same as what it did in Yeung. Thus, even if the argument advanced by the majority regarding IIRIRA had any merit, it would only provide another reason for granting Mr. Poveda’s petition and remanding the matter to the BIA, so that the BIA could reconsider its precedent.[7] This, of course, is what the majority has declined to do.
IV.
For the reasons I have discussed here, it is apparent to me that the BIA continues to treat aliens who travel abroad different from those who do not in determining eligibility for the hardship waiver under section 212(h). Because Yeung holds that this is unconstitutional, I would grant Mr. Poveda’s petition, vacate the BIA’s order, and remand for further proceedings consistent with Yeung.

. Section 212 offers several kinds of waivers. See 8 U.S.C. § 1182(h). As relevant here, "[s]ection 212(h)(1)(B) ... gives the Attorney General the discretion to waive the immigration consequences of certain criminal convictions if a person demonstrates that her removal or denial of admission would result in extreme hardship to a U.S. citizen family member.” Lanier v. U.S. Att'y Gen., 631 F.3d 1363, 1365 (11th Cir.2011).

. In 1996, Congress replaced exclusion and deportation proceedings with "a unified procedure, known as a ‘removal proceeding,' ” for determining whether an alien is inadmissible or deportable. Judulang v. Holder, - U.S. -, 132 S.Ct. 476, 479, 181 L.Ed.2d 449 (2011); see also 8 U.S.C. § 1229a(a). Just as the Supreme Court does, I use the term "deportation” as a shorthand to refer to removals based on deportability. See Judulang, 132 S.Ct. at 483 (referring to "deportation cases”); Carachuri-Rosendo v. Holder, - U.S. -, 130 S.Ct. 2577, 2580, 2583, 177 L.Ed.2d 68 (2010) (referring to an alien who "faced deportation” in 2006); Nijhawan v. Holder, 557 U.S. 29, 42, 129 S.Ct. 2294, 2303, 174 L.Ed.2d 22 (2009) (referring to "a deportation proceeding”). An alien who is subject to deportation is an alien who is subject to removal because he is deportable under the INA.

. In order to be eligible for adjustment of status, “an immigrant visa [must be] immediately available to the alien at the time his application is filed.” 8 U.S.C. § 1255(a). Mr. Poveda has stated that an immigrant visa was not available to him, and neither the BIA nor the government has suggested otherwise.

. The BIA considers an application for adjustment of status to be "a procedural mechanism by which an alien is assimilated to the position of one seeking to enter the United States.” Matter of Rainford, 20 I. & N. Dec. 598, 601 (BIA 1992). This is because, like an alien seeking admission, an applicant for adjustment of status must show that he is admissible to the United States. See 8 U.S.C. § 1255(a).

. Instead, the majority relies on the Seventh Circuit’s decision in Klementanovsky v. Gonzales, 501 F.3d 788 (7th Cir.2007), in order to conclude that the BIA has changed its views. Majority Op. at 1173, 1174, 1176-77. But the Seventh Circuit in that case merely said that the BIA "appears to have backed away” from its prior position. Klementanovsky, 501 F.3d at 793 (emphasis added); see also id. at 794 (noting that the position "seems to be abandoned” (emphasis added)). And the Seventh Circuit made this observation based on the reasoning that the BIA advanced in that particular case. See id. at 793. In any event, a decision from the Seventh Circuit does not relieve us of our obligation to review the BIA’s order in Mr. Poveda’s case and apply our prior panel precedent rule.
The majority also points to Matter of Abosi, 24 I. & N. Dec. 204 (BIA 2007), and 8 C.F.R. § 1245.1(f) as indicating that an alien in the United States can seek a section 212(h) waiver only by applying for adjustment of status. Majority Op. at 1173-74. But I do not read these to overrule the BIA’s decision in Sanchez, which allows some aliens in the United States who are subject to deportation to be considered for the waiver without applying for adjustment of status. Indeed, Abosi and 8 C.F.R. § 1245.1(f) merely clarify that aliens who are facing charges of inadmissibility must apply for adjustment of status. See Abosi, 24 I. & N. Dec. at 205-06 (noting that aliens in the United States "who are seeking to overcome a ground of inadmissibility” must apply for adjustment of status in order to be eligible for the section 212(h) waiver); 8 C.F.R. § 1245.1(f) (addressing section 212(h) "as [it] relate[s] to the inadmissibility of an alien in the United States”). The BIA's deci *1185 sion in Sanchez addresses aliens like Mr. Poveda who are not facing charges of inadmissibility. See 17 I. & N. Dec. at 222-23.

. The majority suggests that the BIA’s order in this case did not apply the rule laid out in Sanchez, Majority Op. at 1176, but this suggestion ignores the BIA’s conclusion that Mr. Poveda was not eligible for the waiver in part because he had not traveled abroad. That explanation underscores the reality that, had Mr. Poveda left and returned to the United States, he would have been eligible for the waiver. The majority emphasizes that the BIA in Mr. Poveda's case did not cite Sanche z, Majority Op. at 1176, but that is of little significance because it is obvious that the BIA applied the reasoning of Sanchez to Mr. Poveda. Finally, I do not think that the BIA’s failure to cite Sanchez in the unpublished, single-member ruling that it rendered in Mr. Poveda’s case can be thought of as a decision to overrule that prior precedent.

. The BIA is the administrative agency that has been entrusted with the task of interpreting and applying the INA in the first instance. See 8 U.S.C. § 1103(a)(1), (g)(1); 8 C.F.R. § 1003.1(a)(1), (d)(1). And it is obvious from the BIA’s order in Mr. Poveda’s case that the BIA has not passed upon the issue of the IIRIRA changes raised by the majority. In light of this, even if one were to assume that the relevant BIA precedent has been undermined by the IIRIRA provisions that the majority cites, the appropriate course of action would be to let the BIA examine this in the first instance. See Negusie v. Holder, 555 U.S. 511, 517, 129 S.Ct. 1159, 1164, 173 L.Ed.2d 20 (2009) (noting that if the BIA has not addressed an issue, it generally should be given "the opportunity to [do so] in the first instance in light of its own expertise” (quotation marks omitted)).