# MATTER OF BALAO

## In Deportation Proceedings

### A-19679883

*Decided by Board March 26, 1992*

Intent to defraud is not an essential element of the crime of passing bad checks under title 18, section 4105(a)(1) of the Pennsylvania Consolidated Statutes and, therefore, a conviction under this law is not for a crime involving moral turpitude.

CHARGE:

Order: Act of 1952—Sec. 241 (a)(4) [8 U.S.C. § 1251(a)(4)]—Crimes involving moral turpitude

Lodged: Act of 1952—Sec. 241(a)(1)(C) [8 U.S.C. § 1251(a)(1)(C)—Nonimmigrant— failed to comply with conditions of status

ON BEHALF OF RESPONDENT:
Philip D. Abramowitz, Esquire
Korenberg, Abramowitz & Feldun
15910 Ventura Blvd., Suite 1531
Encino, California 91436

ON BEHALF OF SERVICE:
Richard Sharkey
District Counsel

BY: Milhollan, Chairman; Dunne, Morris, Vacca, and Heilman, Board Members

The respondent has appealed from the June 19, 1991, decision of an immigration judge finding him deportable as charged and ordering him deported to the Philippines. The appeal will be sustained in part and dismissed in part.

The respondent is a native and citizen of the Philippines, who last entered the United States on November 29, 1970, as the spouse of an exchange visitor. On April 27, 1988, he was convicted in the Court of Common Pleas, Allegheny County, Pennsylvania, on three counts of passing bad checks, in violation of title 18, section 4105(a)(1) of the Pennsylvania Consolidated Statutes. The respondent was sentenced to 2 years' probation for this crime. On August 17, 1988, the respondent was convicted by the same court of theft by failure to make required disposition of funds received, in violation of title 18, section 3917(a) of the Pennsylvania Consolidated Statutes. The respondent was sentenced to 3 1/2 to 7 years' imprisonment for this crime.

On December 14, 1988, the Immigration and Naturalization Service issued an Order to Show Cause, Notice of Hearing, and Warrant for Arrest of Alien (Form I-221S) charging the respondent with deportability under section 241(a)(4) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(4) (1988), as an alien who, after entry, had been convicted of two crimes involving moral turpitude, not arising out of a "single scheme of criminal misconduct." The Order to Show Cause alleged further that the respondent had been admitted as the spouse of a nonimmigrant exchange visitor with authorization to remain until January 14, 1972. Finally, it was asserted that the respondent had been granted indefinite voluntary departure on January 21, 1972, as the beneficiary of an approved third-preference visa petition filed on behalf of his spouse. At deportation proceedings commenced on February 13, 1991, the Service lodged an additional ground of deportability against the respondent pursuant to section 241(a)(1)(C) of the Act, 8 U.S.C. § 1251(a)(1)(C) (Supp. II 1990), alleging that he was also deportable as a nonimmigrant who failed to maintain the conditions of his status by remaining in the United States beyond the period of his authorized stay.

At his deportation hearing, the respondent, who elected to proceed without representation, admitted the allegations contained in the Order to Show Cause regarding the terms of his admission and his convictions. However, he denied his deportability under section 241(a)(4) of the Act, contending that all of his convictions arose out a "single scheme," namely, the financial downfall of his tobacco and cigarette distributing company. The respondent maintained that his bank froze his company account and did not honor three checks he had drawn on the account because he was unable to repay a previously obtained bank loan. He testified further that his conviction for failure to make required disposition of funds resulted from his receipt of $190,000 from various individuals in an attempt to refinance his faltering business. The respondent maintained that all of his convictions arose from financial problems which began when one of his major customers went into bankruptcy, leaving his business without available cash. Since all of his convictions arose out of the same problem, the respondent argued that he was not deportable under section 241(a)(4) of the Act for crimes "not arising out of a single scheme of criminal misconduct."

Further, the respondent alleged that he was not deportable as an overstayed nonimmigrant under section 241(a)(1)(C) of the Act because he had been granted indefinite voluntary departure and authorization to work by the Government until such time as a visa became available to him. He indicated that it was his understanding

that he was legally in the United States awaiting "permanent residency for a priority date."

At the conclusion of the hearing, the immigration judge determined that the respondent was deportable as charged under section 241(a)(4) of the Act. Noting that he was without authority to go behind the record of conviction, the immigration judge found that the respondent's bad check conviction indicated the adjudicating court's finding of an element of deceit. He concluded further that these crimes and the respondent's conviction for theft by failure to make required disposition of funds received did not arise out of a single scheme of misconduct despite the respondent's claim that they all arose out of the failure of his business.

The immigration judge also found the respondent deportable as an overstayed nonimmigrant. In reaching this conclusion, he noted that the grant of indefinite voluntary departure to the respondent was only an acquiescence by the Service of his presence in the United States. According to the immigration judge, while the Government may not have intended to enforce an order of deportation against an alien who was granted indefinite voluntary departure, such a grant did not preclude the entry of an order of deportation against that alien. The immigration judge determined that since the respondent's nonimmigrant status expired on January 14, 1972, he was no longer in a valid nonimmigrant status and was therefore subject to deportation. Finally, the immigration judge determined that the respondent was not eligible for any form of relief from deportation due to his convictions. In this regard, he noted that the respondent did not appear to qualify for a waiver of his crimes, despite the existence of his United States citizen children, based on the apparent changes in the provisions of section 212(h) of the Act, 8 U.S.C. § 1182(h) (Supp. II 1990), under section 601(d)(4) of the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978, 5076-77.

On appeal, the respondent, now represented by counsel, reiterates his claim that the Service has failed to establish his deportability under section 241(a)(4) of the Act. Initially, the respondent asserts that none of his convictions is for a crime involving moral turpitude. In particular, the respondent argues that his August 1988 conviction for theft by failure to make required disposition of funds received does not involve moral turpitude. The respondent also contends that the Service has failed to establish that his crimes did not arise out of a "single scheme of misconduct" so as to render him deportable pursuant to section 241(a)(4) of the Act.

Further, the respondent urges that he is not deportable under section 241(a)(1)(C) of the Act since he was granted indefinite voluntary departure on January 21, 1972, and the district director

never revoked that grant prior to the commencement of the present deportation proceedings. Citing Immigration and Naturalization Service Operations Instructions 242.10 (1972),[1] the respondent asserts that from July 1956 to July 31, 1972, a nonimmigrant present in the United States who was subject to deportation was eligible for extended voluntary departure if he was the beneficiary of an approved third-preference visa petition. He maintains that an alien granted such extended voluntary departure was permitted to remain in the United States indefinitely until an immigrant visa became available to him. Finally, the respondent argues that the immigration judge erroneously dissuaded him from applying for a section 212(h) waiver. He contends that he is statutorily eligible for such relief despite the revision of section 212(h) by the Immigration Act of 1990, 104 Stat. at 5076-77. Further, he asserts that he is the parent of several United States citizen children, one of whom is 21 years old.

Upon a review of the record before us and the statute under which the respondent was convicted, we find that the decision of the immigration judge with regard to the respondent's deportability under section 241(a)(4) of the Act is in error.

Section 241(a)(4) of the Act provides for the deportation of an alien who "at any time after entry is convicted of two crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial." As a primary matter, therefore, we must determine whether the respondent's crimes involve moral turpitude. We conclude that the convictions for passing bad checks are not for crimes involving moral turpitude.

We have held that where a law governing the issuance of worthless checks, by its express terms, involves an intent to defraud, a conviction for a violation of that law constitutes a conviction for a crime involving moral turpitude for immigration purposes. *See Matter of Khalik*, 17 I&N Dec. 518 (BIA 1980) (Michigan); *Matter of Logan*, 17 I&N Dec. 367 (BIA 1980) (Arkansas); *Matter of Westman*, 17 I&N Dec. 50 (BIA 1979) (Washington); *Matter of McLean*, 12 I&N Dec. 551 (BIA 1967) (California and Colorado). However, the Pennsylvania statute at issue here does not expressly require intent to defraud as an element of the crime. 18 Pa. Cons. Stat. § 4105(a)(1) (1987). The statute speaks only of the "knowing" issuance of bad checks. *Id.*

---

[1] Former Operations Instructions 242.10 provided in pertinent part:

*Voluntary departure prior to commencement of hearing.* (a) *Authorization.* Voluntary departure may be granted to any alien who is statutorily eligible therefor ... (6)(i) who is the beneficiary of an approved third preference petition ....

*See also United States ex rel. Parco v. Morris*, 426 F. Supp. 976, 980 n.7 (E.D. Pa. 1977).

The Pennsylvania Supreme Court, in construing section 4105(a)(1), has answered the question of whether intent to defraud is necessary to a conviction under the statute. As stated by the court, it is well established that in enacting section 4105(a)(1), the legislature intended to denominate as a crime the passing of a check for which there are insufficient funds, where the insufficiency was within the knowledge of the issuer, regardless of whether the issuer possessed a specific intent to defraud. *Commonwealth v. Kyslinger*, 484 A.2d 389 (Pa. 1984); *Commonwealth v. Mutnik*, 406 A.2d 516 (Pa. 1979). In *Mutnik*, the court specifically noted that section 4105(a)(1) differs in one important aspect from its repealed predecessor, section 4854, in that an intent to defraud is no longer an essential element of the crime. The court stated as follows:

> Former section 4854 expressly required an intent to defraud as one of the essential elements of the crime, see Commonwealth v. Horton, 465 Pa. 213, 217, 348 A.2d 728, 730 (1975). In redrafting the Crimes Code in 1972, the legislature deliberately omitted the requirement of an intent to defraud as a constituent element of the crime of issuing a bad check. ... Moreover, we are permitted to consider the prior act only when the words of the present statute are not explicit. When, as here, "the words of a statute are clear and free from all possible ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa. C.S.A. § 1291(b) (1979 Pamphlet). We therefore hold that section 4105 does not require the Commonwealth to prove an intent to defraud on the part of the defendant.

*Commonwealth v. Mutnik, supra*, at 517-18 (footnote omitted).

The respondent's convictions under section 4105(a)(1) therefore come within the ambit of those Board decisions where we held that, with regard to worthless check convictions, moral turpitude is not involved if a conviction can be obtained without prior proof that the convicted person acted with intent to defraud. *See Matter of Zangwill*, 18 I&N Dec. 22 (BIA 1981), *rev'd on other grounds, Matter of Ozkok*, 19 I&N Dec. 546 (BIA 1988); *Matter of Colbourne*, 13 I&N Dec. 319 (BIA 1969); *Matter of Stasinski*, 11 I&N Dec. 202 (BIA 1965). In accordance with these precedents, we find that the respondent's convictions for passing bad checks are not for crimes involving moral turpitude.

Based on the foregoing, we conclude that the Service has failed to establish the respondent's deportability under section 241(a)(4) of the Act. Even assuming, arguendo, that the respondent's conviction for theft by failure to make required disposition of funds received constitutes a conviction for a crime involving moral turpitude, deportability under section 241(a)(4) requires that an alien be convicted of at least two crimes involving moral turpitude. Since the respondent's convictions for passing bad checks do not involve moral turpitude, the Service cannot establish the respondent's deportability pursuant to section 241(a)(4) of the Act. Thus, we need not reach the

444

question of whether or not the respondent's crimes arose out of a single scheme of criminal misconduct. Accordingly, that part of the respondent's appeal relating to the charge of deportability under section 241(a)(4) will be sustained.

We turn now to the charge of deportability brought under section 241(a)(1)(C) of the Act. It is undisputed that the respondent was granted indefinite voluntary departure on January 12, 1972, as the derivative beneficiary of a third-preference visa petition approved on his wife's behalf. Under an Immigration and Naturalization Service policy in effect from at least August 1956 until July 31, 1972, a nonimmigrant physically in the United States, who was subject to deportation but who filed a satisfactory third-preference visa petition, was eligible for extended (indefinite) voluntary departure. *See* former Operations Instructions 242.10(a)(6) (1972); *Matter of Banaria*, 16 I&N Dec. 421 (BIA 1977). Citing 8 C.F.R. § 242.5(c) (1991), the respondent asserts that since he was never notified by the district director of the revocation of this indefinite voluntary departure grant, he cannot be deported as an overstayed nonimmigrant pursuant to section 241(a)(1)(C) of the Act. We disagree.

The above-referenced Operations Instructions relating to the Service's indefinite voluntary departure policy was rescinded on July 31, 1972. Thereafter, the Service policy regarding indefinite voluntary departure was codified at 8 C.F.R. § 242.5(a)(2) (1979). *See also* 43 Fed. Reg. 29,526, 29,528 (1978). Pursuant to 8 C.F.R. § 242.5(a)(2)(vi)(D) (1991), voluntary departure is available to an alien who: 1) is statutorily eligible for such relief, 2) is admissible to the United States as an immigrant, and 3) is a third-preference alien with a priority date earlier than August 9, 1978. The respondent falls into this category of aliens since he was granted derivative third-preference status on January 12, 1972. We emphasize, however, that 8 C.F.R. § 242.5(a)(3) (1991) specifically limits the period of voluntary departure granted. By its terms, an alien within the above category, such as the respondent, is granted voluntary departure for an indefinite period *until* an immigrant visa is available. The respondent himself has noted this limitation on the voluntary departure granted him pursuant to the precursor to this regulation. The State Department Visa Bulletin indicates that a visa became available to the respondent in November 1988. *See* Department of State Visa Bulletin, Vol. VI, No. 15 (November 1988). There is no indication that the respondent took any action to acquire immigrant status after a visa became available to him. We conclude that the respondent's voluntary departure grant expired once a visa became available to him and he failed to act upon that availability and enter the United States as an

immigrant. He then reverted to the nonimmigrant status under which he was admitted.

The respondent's reliance on 8 C.F.R. § 242.5(c) (1991) is misplaced. That section provides for the revocation of voluntary departure by a district director or other designated official, without notice, if it subsequently appears that voluntary departure should not have been granted. The regulation is inapplicable to the present case. The question presented here relates to the termination of the respondent's voluntary departure period and not the revocation of such grant, which is addressed in 8 C.F.R. § 242.5(c) (1991). As previously indicated, the point of termination is specifically stated in 8 C.F.R. § 242.5(a)(3) (1991). Moreover, we find totally without merit counsel's assertion that the language of the regulation implies that all other voluntary departure recipients must be notified of any attempted revocation. Counsel's theory assumes language not contained in the regulation.

The Form I-94 (Arrival-Departure Record) contained in the record reflects that the respondent's nonimmigrant status, with extensions, expired on January 14, 1972. The respondent is therefore in the United States beyond the period authorized and is deportable under section 241(a)(1)(C) of the Act as a nonimmigrant who failed to maintain the conditions of his status. That part of the respondent's appeal relating to the charge of deportability under section 241(a)(1)(C) of the Act will be dismissed.

Finally, we conclude that a section 212(h) waiver is unavailable to the respondent as a means of relief from deportation. Section 212(h) relief is available in deportation proceedings in conjunction with an application for adjustment of status, where it may be used to waive inadmissibility that would otherwise preclude adjustment of status. *See Matter of Parodi*, 17 I&N Dec. 608 (BIA 1980); *Matter of Bernabella*, 13 I&N Dec. 42 (BIA 1968). It has also been held available to aliens deportable under section 241(a)(4) of the Act to waive the comparable ground of excludability under section 212(a)(9) on a nunc pro tunc basis. *Matter of Sanchez*, 17 I&N Dec. 218 (BIA 1980). However, the respondent did not apply for adjustment of status during the deportation proceedings and to date has made no such application for relief. Additionally, section 212(h) relief is not available to the respondent on a nunc pro tunc basis since it has not been demonstrated that he departed and returned to the United States since the time of the 1988 convictions. *Matter of Parodi, supra*. Given the respondent's clear ineligibility for relief under section 212(h), either the former version or as amended by the Immigration Act of 1990, 104 Stat. at 5076-77, we need not reach the other issues raised by him

relating to the application of that section.[2] The respondent has not applied for any other form of relief from deportation. Accordingly, the following orders will be entered.

**ORDER:** The appeal from the finding of deportability under section 241(a)(4) of the Act is sustained.

**FURTHER ORDER:** The appeal from the finding of deportability under section 241(a)(1)(C) of the Act and the denial of section 212(h) relief is dismissed.

---

[2] As indicated by the immigration judge, at the time of the respondent's June 19, 1991, deportation hearing, the law with regard to section 212(h) was in flux. In this regard, we note that section 212(h) was significantly amended, first by the Immigration Act of 1990, 104 Stat. at 5076-77, and subsequently by section 307(f) of the Miscellaneous and Technical Immigration and Naturalization Amendments of 1991, Pub. L. No. 102-232, 105 Stat. 1733, 1755.