[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-14512
_____

Agency No. A029-334-191

SAMMIR A. POVEDA,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(August 27, 2012)

Before WILSON, PRYOR, and MARTIN, Circuit Judges.

PRYOR, Circuit Judge:

The main question presented by this petition for review is whether a

removable alien is eligible for a waiver of inadmissability, under section 212(h) of the Immigration and Nationality Act, 8 U.S.C. § 1182(h), if he remains within the United States, but fails to apply for an adjustment of his status, 8 U.S.C. § 1255. Sammir Poveda, a lawful permanent resident, petitions for review of a decision of the Board of Immigration Appeals that vacated an immigration judge's decision that Poveda is eligible for a hardship waiver under section 212(h). The immigration judge had determined that Poveda is eligible for a hardship waiver based on a misreading of our decisions in Lanier v. United States Attorney General, 631 F.3d 1363 (11th Cir. 2011), and Yeung v. INS, 76 F.3d 337 (11th Cir. 1995). Poveda argues that, as an alien lawfully present in the United States, he need not concurrently apply for an adjustment of his status, but we must defer to the contrary interpretation of section 212(h) by the Board. See 8 U.S.C. § 1182(h); 8 C.F.R. § 1245.1(f). And we reject Poveda's argument that the interpretation by the Board would violate his right to equal protection as a component of due process of law, U.S. CONST. AMEND. V. Poveda's alternative argument that he qualifies as an inadmissable alien, 8 U.S.C. § 1101(a)(13), eligible for a hardship waiver under section 212(h) also fails. We deny Poveda's petition for review.

## I. BACKGROUND

2

Sammir Poveda is a native and citizen of Nicaragua.  After his admittance into the United States, Poveda adjusted his status in 2002 to that of an alien lawfully admitted for permanent residence under the Nicaraguan Adjustment and Central American Relief Act of 1997, Pub. L. No. 105-100, 111 Stat. 2160, 2193 (1997).  In 2007, a Florida court convicted Poveda of the offense of battery on a child by bodily fluids, see Fla. Stat. Ann. § 784.085(1), and soon afterward, the Department of Homeland Security commenced removal proceedings against him, see 8 U.S.C. § 1227(a)(2)(A)(i), id. § 1227(a)(2)(A)(iii), id. § 1227(a)(2)(E)(i).

Poveda applied for a hardship waiver of removal under section 212(h).  An immigration judge determined that Poveda was removable, but granted Poveda's application for a waiver under section 212(h) by interpreting our decisions in Lanier, 631 F.3d 1363, and Yeung, 76 F.3d 337, to mean that an alien is eligible for a hardship waiver regardless of whether the alien has concurrently applied for an adjustment of status.  The government appealed that decision to the Board of Immigration Appeals.

The Board vacated the immigration judge's decision, based on the decisions of two of our sister circuits, see Cabral v. Holder, 632 F.3d 886 (5th Cir. 2011); Klementanovsky v. Gonzales, 501 F.3d 788 (7th Cir. 2007), that an alien must "submit an application for a 212(h) waiver concurrently with an application for a

3

visa, admission, or adjustment of status." The Board also concluded that the immigration judge had misread our precedents. The Board reasoned that Lanier stood "for the proposition that an alien who adjusted to lawful permanent resident status is not necessarily barred from seeking a waiver under section 212(h) . . . as a result of having been convicted of an aggravated felony," and that the reference to Yeung in Lanier was intended to explain only "that a 212(h) waiver may be granted by an Immigration Judge in removal proceedings as opposed to being a form of relief restricted to aliens seeking physical entry into the United States." Because it concluded that Poveda was ineligible for the hardship waiver, the Board ordered the removal of Poveda to Nicaragua.

## II.  STANDARDS OF REVIEW

"This Court reviews only the decision of the [Board], except to the extent that it expressly adopts the [immigration judge's] opinion." Nreka v. U.S. Att'y Gen., 408 F.3d 1361, 1368 (11th Cir. 2005) (internal quotation marks omitted). "To the extent that the [Board's] . . . decision was based on a legal determination, review is de novo." Id. Although we lack jurisdiction "to review a decision of the Attorney General to grant or deny a waiver," 8 U.S.C. § 1182(h), "[w]e have jurisdiction to review the legal question of whether [Poveda] is statutorily eligible to apply for a § 212(h) waiver." Lanier, 631 F.3d at 1365 n.2. And, we have

4

jurisdiction to consider constitutional challenges to the interpretation by the Board of the statute it administers. See 8 U.S.C. 1252(a)(2)(D). Although "[w]e review the [Board's] statutory interpretation de novo," we "will defer to the [Board's] interpretation of a statute if it is reasonable and does not contradict the clear intent of Congress." Jaggernauth v. U.S. Att'y Gen., 432 F.3d 1346, 1350 (11th Cir. 2005). "[J]udicial deference to the Executive Branch is especially appropriate in the immigration context[.]" INS v. Aguirre-Aguirre, 526 U.S. 415, 425, 119 S. Ct. 1439, 1445 (1999). "We review constitutional challenges . . . de novo," Lapaix v. U.S. Att'y Gen., 605 F.3d 1138, 1143 (11th Cir. 2010), and "federal classifications such as those at issue in § 212 of the [Act] are subject to minimal scrutiny under the rational basis standard of review, and are valid if not arbitrary or unreasonable." Yeung, 76 F.3d at 339. "Under the rational basis standard, the [alien] bears the burden of establishing that the government regulation is arbitrary or unreasonable, and not rationally related to the government's purpose." Id.

## III.  DISCUSSION

We divide our discussion in two parts. First, we discuss whether Poveda, as an alien within our borders, is eligible for a hardship waiver without concurrently applying for an adjustment of his status. Second, we discuss whether Poveda is an applicant for admission.

5

*A. As an Alien Within Our Borders, Poveda is Ineligible for a Hardship Waiver Unless He Applies for an Adjustment of His Status.*

"Section 212(h)(1)(B) of the [Act] gives the Attorney General the discretion to waive the immigration consequences of certain criminal convictions if a person demonstrates that [his or] her removal or denial of admission would result in extreme hardship to a U.S. citizen family member." Lanier, 631 F.3d at 1365. On its face, the waiver is available only to aliens charged with inadmissibility in removal proceedings and only when the Attorney General has agreed to grant an alien's application for a visa, for admission, or for an adjustment of status:

> The Attorney General may, in his discretion, waive the application of [certain grounds of inadmissibility] . . . if . . . the Attorney General, in his discretion, and pursuant to such terms . . . as he may by regulations prescribe, has consented to the alien's applying or reapplying for a visa, for admission to the United States, or adjustment of status.

8 U.S.C. § 1182(h).

Although section 212(h) mentions no grounds of deportability and, on its face, applies only to aliens charged with inadmissibility, the Board earlier took the position that a lawful permanent resident present in the United States could apply for a waiver under section 212(h) during deportation proceedings so long as he "depart[ed], return[ed], and then appl[ied] for a waiver." Klementanovsky, 501 F.3d at 793. See, e.g., Matter of Sanchez, 17 I. & N. Dec. 218, 222–24 (BIA

6

1980).  In Yeung, we ruled that the position of the Board that an alien is ineligible for the waiver "simply by virtue of his failure to depart and reenter" was "to recognize a distinction that can only be characterized as arbitrary, and that is without a fair and substantial relation to the object of the legislation."  Yeung, 76 F.3d at 340 (internal quotation marks omitted).  We remanded that matter to the Board to "afford the Attorney General, in whom Congress has vested the authority to rule on legal questions arising from the immigration law, the opportunity to reconsider and construe § 212(h) consistent with the competing statutory, constitutional, and policy interests at stake."  Yeung, 76 F.3d at 341.

In the wake of Yeung, the Board has "abandoned" its previous position. Klementanovsky, 501 F.3d at 794.  The Board now interprets section 212(h) to provide that the Attorney General may grant a waiver in two situations: first, the Attorney General may provide a waiver to an alien at the border who seeks admission, including an alien who has departed the United States after committing a deportable offense, so long as the alien remains outside our borders while applying for relief; and second, the Attorney General may provide a waiver to an alien within our borders after his conviction for a deportable offense so long as he applies for an adjustment of status.  Cf. Matter of Abosi, 24 I. & N. Dec. 204, 205 (BIA 2007).  And federal regulations provide that, for aliens who apply for a

7

hardship waiver while within the United States, an application for an adjustment of status "shall be the sole method of requesting the exercise of discretion under section 212 . . . (h) . . . ." 8 C.F.R. § 1245.1(f). See Abosi, 24 I. & N. Dec. at 205 n. 2 (interpreting the regulation and distinguishing aliens seeking admission, who need not apply for an adjustment of status in conjunction with a request for a waiver under section 212(h), and aliens in the United States who must apply for status adjustment).

Poveda argues that he is statutorily eligible for a waiver. He contends that our decisions in Lanier and Yeung foreclose the current position of the Board that an alien who remains within the United States must apply for an adjustment of status to obtain a waiver under section 212(h). We disagree.

Poveda's reliance on Lanier is misplaced. In that decision, we construed the following provision of section 212(h), which is not at issue in this petition for review: "No waiver shall be granted under this subsection in the case of an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence if . . . since the date of such admission the alien had been convicted of an aggravated felony." 8 U.S.C. § 1182(h). We concluded that "the plain language of [the statute] provides that a person must have physically entered the United States, after inspection, as a lawful permanent

8

resident in order to have 'previously been admitted  to the United States as an alien lawfully admitted for permanent residence.'" Lanier, 631 F.3d at 1366–67. And we determined "that the statutory bar to relief does not apply to those persons who . . . adjusted to lawful permanent resident status while already living in the United States." Id. at 1367.  We did not decide whether the alien felon was otherwise eligible to receive a waiver under section 212(h); we instead remanded the matter to the Board to consider that question. Id.

Poveda's reliance on Yeung fares no better.  That decision concerned an interpretation of section 212(h) that the Board has since "backed away from." Klementanovsky, 501 F.3d at 793.  In Yeung, the Board "held out the possibility that a § 212(h) waiver would be available for a deportee who had departed and returned to this country subsequent to his conviction." Id. (internal quotation marks omitted).  The Board now construes section 212(h) to allow only those who seek readmission from outside of our borders or those within our borders who apply for an adjustment of status to obtain a hardship waiver. Id.  That interpretation is more consistent with the plain language of section 212(h) than the earlier interpretation by the Board that we addressed in Yeung. Id. at 793–94.

The dissent's contention that the Board has not abandoned its previous position in Yeung misunderstands the current state of the governing law,

9

especially the changes wrought by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996. The previous position of the Board is no longer tenable in the light of the 1996 Act, which created an "upheaval in immigration law," Adefemi v. Ashcroft, 358 F.3d 828, 831 (11th Cir. 2004). Before Congress enacted the 1996 Act, whether an alien had "entered" the United States affected his legal status. An alien could achieve "entry" by physically crossing into United States territory regardless of whether the alien crossed legally or evaded inspection. See Leng May Ma v. Barber, 357 U.S. 185, 188–90, 78 S. Ct. 1072, 1074–75 (1958). Nevertheless, an alien in custody or temporarily paroled "pending determination of his admissibility" had not entered the United States even though he was "physically within the United States." Id. Whether an alien had "entered" mattered because "important immigration provisions were keyed to an alien's 'entry.'" Assa'ad v. U.S. Att'y Gen., 332 F.3d 1321, 1328 (11th Cir. 2003). Aliens who had not yet entered the United States were subject to "exclusion" hearings. Landon v. Plasencia, 459 U.S. 21, 25, 103 S. Ct. 321, 325 (1982). And aliens who had entered the United States, with or without inspection, were subject to "deportation." Id.

No longer does "the procedure by which an alien [is] removed from the United States turn[] on the physical location of the alien." Assa'ad, 332 F.3d at

10

1326.  "The distinction now turns on status rather than location."  Id. at 1326 n.10.

"[A]n alien in the United States who has been admitted is subject to deportability grounds, see INA § 237(a), 8 U.S.C. § 1227(a), while an alien who has not, regardless of his or her location, is subject to inadmissibility grounds, INA § 212(a), 8 U.S.C. § 1182(a)."  Id.

The 1996 Act affected the legal status of a lawful permanent resident who returned from a trip abroad.  Under former section 101(a)(13) of the Immigration and Nationality Act, a returning permanent resident alien was not regarded as making "an entry" into the United States so long as the alien's presence abroad was not "intended or reasonably . . . expected."  Rosenberg v. Fleuti, 374 U.S. 449, 452, 83 S. Ct. 1804, 1807 (1963) (citing former 8 U.S.C. § 1101(a)(13)).  In Fleuti, the Supreme Court held that a lawful permanent resident's "innocent, casual and brief" excursion was not sufficiently "interruptive" of the alien resident's status to be "intended" and would not be deemed an "entry."  Id. at 462, 83 S. Ct. at 1812.  In other words, a lawful permanent resident who made an "innocent, casual, and brief" excursion abroad was deportable, but not excludable. Id.  The 1996 Act altered the law for permanent residents who returned to the United States after an "innocent, casual, and brief excursion" abroad.  To be sure, a lawful permanent resident who returns from abroad ordinarily is not considered

11

an applicant for admission. 8 U.S.C. § 1101(a)(13)(C). But a lawful permanent resident who commits certain crimes before departure is considered an applicant for admission upon his return regardless of the length of his trip. 8 U.S.C. § 1101(a)(13)(C)(v). Had Poveda left the country after committing his sexual offense, he would have been treated as an applicant for admission upon his return to this country. Id.

The dissent's assertion that "aliens who travel abroad following their conviction and who then face deportation can seek the waiver, even if they need not overcome a ground of inadmissability during their removal proceedings" ignores the changes wrought by the 1996 Act. A non-resident alien, who leaves this country and then returns, may be removed and is subject to grounds of inadmissability, whether or not he committed a crime before traveling abroad. 8 U.S.C. § 1101(a)(13)(A). And a lawful permanent resident who travels abroad following a conviction for certain crimes will also be treated as an applicant for admission upon his return. Id. § 1101(a)(13)(C)(v). Contrary to the dissent's assertion, a lawful permanent resident who commits a crime, travels abroad, and returns is treated like any other alien seeking admission at our border. That the government may choose to charge a returning lawful permanent resident with grounds of deportability instead of grounds of inadmissability does not change

12

that the lawful permanent resident is subject to grounds of inadmissability upon his return to this country under section 1101(a)(13)(C)(v).  See, e.g., Matter of Guzman Martinez, 25 I. & N. Dec. 845, 848 n.4 (BIA 2012) ("If a lawful permanent resident is permitted to reenter the United States after inspection by an immigration officer but is thereafter determined to have engaged in illegal activity before reentry, the alien may be subject to a charge of deportability . . . for having been inadmissible at the time of a prior entry.").  Thus, a waiver of inadmissability under section 212(h) is available to him.  This regime is different from the system described in Yeung that existed before 1996, where a lawful permanent resident who committed a crime before embarking on a trip abroad was eligible to receive a section 212(h) waiver even though he was not considered an applicant for admission upon his return to this country so long as his trip was  "innocent, casual, and brief."

The dissent labors under the misapprehension that there are aliens who are eligible for a waiver under section 212(h) even if they have not sought admission at the border nor have applied to adjust their status.  But the dissent can cite no decision of the Board after 1996—no decision in the last 16 years—which states that an alien may receive a waiver under section 212(h) without applying for admission or for an adjustment of status.  Indeed, we are unaware of any decision

13

that even discusses that proposition.

The dissent asserts that the opinion of the Board in this matter proves that the Board continues to adhere to its old approach, but just the opposite is true. The opinion does not state that Poveda was eligible to receive the waiver so long as he left and returned, regardless of whether he faced a ground of inadmissability. Indeed, the opinion provides no citation to a Board precedent decided before 1996 and, of course, no citation to Sanchez. Instead, the opinion cites Abosi to explain that "a returning legal permanent resident seeking to overcome a ground of inadmissibility is not required to apply for adjustment of status in conjunction with a waiver of inadmissability." And the opinion cites Klementanovosky and Cabral to explain that, because Poveda was not seeking admission, he was required to apply for an adjustment of status "in conjunction with a waiver of inadmissability." If the Board truly continues to adhere to its old approach, it is puzzling that it did not explain that Poveda could have been eligible for the waiver, even if he did not face a ground of inadmissability, so long as he departed and returned.

The interpretation of the immigration statutes by the Board is "due Chevron deference where appropriate. Under Chevron, where Congress in a statute has not spoken unambiguously on an issue, the interpretation of the statute by an agency

14

entitled to administer it is entitled to deference so long as it is reasonable." Chen v. U.S. Att'y Gen., 565 F.3d 805, 809 (11th Cir. 2009) (internal quotation marks and citations omitted); see Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 865, 104 S. Ct. 2778, 2793 (1984). "The degree of deference is especially great in the field of immigration." Chen, 565 F.3d at 809 (internal quotation marks omitted); Aguirre-Aguirre, 526 U.S. at 425, 119 S. Ct. at 1445. Because section 212(h) is silent about whether an alien within our borders may obtain a hardship waiver without concurrently applying for an adjustment of status, we must consider whether the new interpretation of section 212(h) by the Board is reasonable.

The new interpretation by the Board of section 212(h)—that an alien within the United States must apply for an adjustment of his status to receive a hardship waiver—is reasonable. See Cabral, 632 F.3d at 891; Klementanovsky, 501 F.3d at 794. Although section 212(h) permits the Attorney General to waive certain grounds of inadmissibility, not grounds of deportability, an alien within the United States who applies for an adjustment of status "is assimilated to the position of an alien outside the United States seeking entry as an immigrant" because an alien may adjust his status only if he is admissible. CHARLES GORDON ET AL., IMMIGRATION LAW AND PROCEDURE § 51.03[3] (rev. ed. 2001); Cabral, 632 F.3d

15

at 891; Jankowski-Burczyk v. INS, 291 F.3d 172, 175 n.2 (2d Cir. 2002); see 8 U.S.C. § 1255(i)(2)(A) (an alien may obtain an adjustment in status only if he "is admissible to the United States . . . ."). The Board reasonably concluded that the Attorney General may grant a hardship waiver to an alien in that assimilated position.

Two of our sister circuits likewise have held that the new interpretation by the Board of section 212(h) is reasonable. In Cabral, the Fifth Circuit upheld the decision of the Board that an alien was ineligible to apply for a hardship waiver because he remained within the United States and had not applied for an adjustment of status, 632 F.3d at 891, and in Klementanovsky, the Seventh Circuit upheld the same kind of decision, 501 F.3d at 794.

Poveda argues, and the dissent agrees, that there is no rational basis for the Board to differentiate between aliens, like Poveda, who have failed to travel and aliens who have self-deported, but the government responds that Congress has rationally distinguished between aliens who are inadmissible and aliens who are deportable. We agree with the government.

Poveda and the dissent misconstrue the classifications made by Congress and the Board. The distinction between an alien who is ineligible for a hardship waiver and an alien who is eligible for the waiver is not "lack of international

16

travel." Congress and the Board instead have differentiated "between those criminal aliens who seek to be admitted to the United States, and those criminal aliens who are being deported from the United States." Klementanovsky, 501 F.3d at 791–92. The former category of aliens is eligible to apply for a hardship waiver while the latter category is ineligible to apply for a waiver. Id. at 792.

The new classifications by Congress and the Board are different from the state of the law before 1996, when a lawful permanent resident could receive a hardship waiver only if he departed. See, e.g., Matter of Balao, 20 I. & N. Dec. 440, 446 (BIA 1992). After 1996, a lawful permanent resident may obtain the waiver only if he is an applicant for admission or assimilated to the position of an applicant for admission by applying for an adjustment of status. In other words, a waiver of inadmissability is available only to waive grounds of inadmissability.

"Congress has plenary power to pass legislation concerning the admission and exclusion of aliens," and "federal classifications that distinguish among groups of aliens are subject only to rational basis review." Resendiz-Alcaraz v. Ashcroft, 383 F.3d 1262, 1271 (11th Cir. 2004). "Rational basis review is not demanding. Rather, a legislative classification subject to rational basis review is accorded a strong presumption of validity, and review of enactments subject to the rational basis standard must be a paradigm of judicial restraint." Id. (internal

17

quotation marks and citations omitted).  These types of "legislative classifications must be upheld against an equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification, and the burden lies on the [alien] to demonstrate that no conceivable basis exists to support the classification."  Id. at 1271–72 (internal quotation marks and citations omitted).  "Our job is not to determine the ultimate wisdom of Congress' decision to deny discretionary relief. . . . [R]ational-basis review in equal protection analysis is not a license for courts to judge the wisdom, fairness, or logic of legislative choices."  Moore v. Ashcroft, 251 F.3d 919, 926 (11th Cir. 2001) (internal quotation marks omitted).

There are at least five rational bases for the classifications defined by Congress and the Board.  First, at least in cases where an alien must apply for the waiver while outside the United States, "Congress might have wanted to ensure that dangerous people, including those convicted of crimes . . ., remain outside the United States while their applications for discretionary relief are being considered."  Cabral, 632 F.3d at 893; Klementanovsky, 501 F.3d at 792–93.  Second, in these cases, "Congress might have wanted aliens seeking such waivers to do so from outside the United States in order to discourage them from attempting to 'fly under the radar' of the immigration authorities in the event that

18

the discretionary waiver is ultimately denied." Cabral, 632 F.3d at 893;

Klementanovsky, 501 F.3d at 793.  Third, in these cases, "Congress might have

rationalized that granting a waiver to those who self-deport and seek readmission

at the borders provides an incentive for such aliens to voluntarily depart at their

own expense." Cabral, 632 F.3d at 893; Klementanovsky, 501 F.3d at 793.

Fourth, in cases where an alien either remains outside our borders or applies for an

adjustment of status while within our borders, the alien must provide immigration

authorities with information about his whereabouts and "immigration authorities

[gain] a second bite at the apple to intercept and consider otherwise unlawful

aliens." Cabral, 632 F.3d at 893; Klementanovsky, 501 F.3d at 793.  Fifth,

Congress might have wanted to punish those who were given the opportunity to

become a lawful permanent resident and "repaid that act by commencing a life of

crime" by requiring them to self-deport before the Attorney General considers

their request for a hardship waiver. Klementanovsky, 501 F.3d at 792.

Chuang v. U.S. Att'y Gen., 382 F.3d 1299, 1304 (11th Cir. 2004), is

instructive.  In that decision, we reviewed the denial of an alien's request for relief

from deportation under former section 212(c) of the Immigration and Nationality

Act, and the alien argued that the "bar against INA § 212(c) relief for deportable

criminal aliens, and its allowance of § 212(c) relief for excludable aliens,

19

violate[d] his right to Equal Protection under the Due Process Clause of the Fifth

Amendment." Id. at 1303.  We rejected the alien's argument and concluded that

the distinction between a deportable and an excludable alien's eligibility for relief

under section 212(c) was rational:

> A rational and indeed sensible reason can readily be assigned to
> Congress's more lenient treatment of excludable as distinct from
> deportable aliens: it creates an incentive for deportable aliens to leave
> the country - which is after all the goal of deportation - without their
> having to be ordered to leave at the government's expense. To induce
> their voluntary departure, a little carrot is dangled before them,
> consisting of the opportunity to seek a waiver should they seek to return
> to the country and by doing so trigger exclusion proceedings.
>
> This equal protection issue must not be confused with that in Francis v.
> INS, 532 F.2d 268 (2d Cir. 1976), where the government was taking the
> irrational position that an alien who after coming to the United States
> had taken a trip abroad and returned and was then ordered deported was
> entitled to more consideration than one who had never taken a foreign
> trip after coming to the United States. That is different from the situation
> of an alien who seeks discretionary relief while he is still outside the
> United States.

Id. at 1303–04 (quoting LaGuerre v. Reno, 164 F.3d 1035, 1041 (7th Cir. 1998)).

The Board now makes a similar distinction between removable and inadmissible

aliens, and that position is rational for the reasons we articulated in Chuang.

 *B. So Long as He Remains Within the United States, Poveda is Not an Applicant
for Admission.*

Poveda argues, in the alternative, that he is eligible for a hardship waiver

20

because he is actually an applicant for admission.  Poveda contends that an alien lawfully admitted for permanent residence "shall not be regarded as seeking an admission into the United States for purposes of the immigration laws" unless that alien has committed certain crimes.  8 U.S.C. § 1101(a)(13)(C)(v).  Poveda contends that, when an alien commits one of the designated crimes, section 1101(a)(13)(C)(v) mandates that the alien be considered an applicant for admission.  Poveda maintains that, because he has committed one of the designated crimes, he is an applicant for admission who is eligible for a hardship waiver.

The Fifth Circuit in Cabral—for good reason—rejected this exact argument as "utterly without merit."  Cabral, 632 F.3d at 892.  The Immigration and Nationality Act defines the terms "admission" and "admitted" to mean "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer."  8 U.S.C. § 1101(a)(13)(A).  The latter portion of the statute "governs the status of [lawful permanent residents] returning to the United States from a trip abroad."  Onwuamaegbu v. Gonzales, 470 F.3d 405, 410 (1st Cir. 2006).  The statute clarifies that a permanent resident alien who returns from abroad is not regarded as seeking an admission each time he reenters the United States unless the permanent resident has taken certain actions:

21

(C) An alien lawfully admitted for permanent residence in the United States shall not be regarded as seeking an admission into the United States for purposes of the immigration laws unless the alien—

> (i) has abandoned or relinquished that status,
> (ii) has been absent from the United States for a continuous period in excess of 180 days,
> (iii) has engaged in illegal activity after having departed the United States,
> (iv) has departed from the United States while under legal process seeking removal of the alien from the United States, including removal proceedings under this chapter and extradition proceedings,
> (v) has committed an offense identified in section 1182(a)(2) of this title, unless since such offense the alien has been granted relief . . . .,
> (vi) is attempting to enter at a time or place other than as designated by immigration officers or has not been admitted to the United States after inspection and authorization by an immigration officer.

8 U.S.C. § 1101(a)(13)(C).  Poveda's argument that he is an applicant for admission ignores the precept that, "in construing a statute, we do not look at one word or term in isolation, but instead we look to the entire statutory context," Durr v. Shinseki, 638 F.3d 1342, 1349 (11th Cir. 2011) (internal quotation marks and alteration omitted).  The general rule of admissibility is provided in section 1101(a)(13)(A), and an exception is provided in section 1101(a)(13)(C).

Poveda is not "seeking an admission," 8 U.S.C. § 1101(a)(13)(C), because he has not attempted to reenter the United States after committing a crime, id. §

22

1101(a)(13)(A).  Poveda is "already lawfully present in the United States."

Cabral, 632 F.3d at 892.  And section 1101(a)(13)(C) is not triggered when a

permanent resident does not leave.  See Cabral, 632 F.3d at 892; cf. Vartelas v.

Holder, 132 S. Ct. 1479, 1484–85 (2012) (explaining that "lawful permanent

residents returning . . . may be required to seek an admission into the United

States" if they take any of the actions enumerated in section 101(a)(13)(C))

(internal quotation marks and alteration omitted); Richardson v. Reno, 162 F.3d

1338, 1346–47 (11th Cir. 1998), vacated by Richardson v. Reno, 526 U.S. 1142,

119 S. Ct. 2016 (1999), reinstated in part by Richardson v. Reno, 180 F.3d 1311

(11th Cir. 1999) ("IIRIRA also altered the rules for permanent resident aliens

returning from abroad . . . . [The] new INA § 101(a)(13)(c) provides that 'an alien

lawfully admitted for permanent residence in the United States shall not be

regarded as seeking an admission into the United States for purposes of the

immigration laws unless the alien [takes certain actions].'") (emphasis omitted);

Onwuamaegbu, 470 F.3d at 410.

## IV. CONCLUSION

Poveda's petition for review is denied.

**PETITION DENIED**.

23

MARTIN, Circuit Judge, dissenting:

I respectfully dissent. The majority states that the BIA has abandoned its previous interpretation of section 212(h) of the INA, 8 U.S.C. § 1182(h), one which was held unconstitutional in Yeung v. INS, 76 F.3d 337, 341 (11th Cir. 1995).[1] I am not convinced, however, that the BIA has acquiesced to our prior ruling. To the contrary, the BIA applied essentially the same framework that we found problematic in Yeung to Mr. Poveda, thus precluding him from seeking a hardship waiver under section 212(h). Because this BIA decision conflicts with our prior precedent, I would grant Mr. Poveda's petition for review, vacate the BIA's order, and remand for further proceedings consistent with Yeung.

I.

As this Court observed in Yeung, the BIA precedent that delineates the availability of the section 212(h) waiver draws an important distinction between aliens who travel abroad following a conviction and those who do not. See id. at 339–341. Aliens who leave the United States and who are subject to deportation after they return are automatically eligible for the waiver, regardless of whether

---

[1] Section 212 offers several kinds of waivers. See 8 U.S.C. § 1182(h). As relevant here, "[s]ection 212(h)(1)(B) . . . gives the Attorney General the discretion to waive the immigration consequences of certain criminal convictions if a person demonstrates that her removal or denial of admission would result in extreme hardship to a U.S. citizen family member." Lanier v. U.S. Att'y Gen., 631 F.3d 1363, 1365 (11th Cir. 2011).

24

they face a charge of inadmissibility.  See Matter of Sanchez, 17 I. & N. Dec. 218, 222–23 (BIA 1980).[2]  In other words, aliens who travel abroad following their conviction and who then face deportation can seek the waiver, even if they need not overcome a ground of inadmissibility during their removal proceeding.  See id.  Aliens who have returned from travel abroad also need not apply for adjustment of status in order to be considered for the section 212(h) waiver.  See, e.g., Matter of Balao, 20 I. & N. Dec. 440, 446 (BIA 1992).

By contrast, aliens who do not travel abroad following a conviction are not automatically eligible for the waiver.  Indeed, these aliens cannot seek the waiver unless they also apply for, and are otherwise eligible for, adjustment of status.  See Matter of Parodi, 17 I. & N. Dec. 608, 611–12 (BIA 1980) (noting that the waiver can be granted to these aliens "in conjunction with adjustment of status"); Matter of Bernabella, 13 I. & N. Dec. 42, 43–44 (BIA 1968) (holding that an alien could not seek the waiver because he was not otherwise eligible for adjustment of

_____

[2] In 1996, Congress replaced exclusion and deportation proceedings with "a unified procedure, known as a 'removal proceeding,'" for determining whether an alien is inadmissible or deportable.  Judulang v. Holder, ___ U.S. ___, ___, 132 S. Ct. 476, 479 (2011); see also 8 U.S.C. § 1229a(a).  Just as the Supreme Court does, I use the term "deportation" as a shorthand to refer to removals based on deportability.  See Judulang, 132 S. Ct. at 483 (referring to "deportation cases"); Carachuri-Rosendo v. Holder, ___ U.S. ___, ___, 130 S. Ct. 2577, 2580, 2583 (2010) (referring to an alien who "faced deportation" in 2006); Nijhawan v. Holder, 557 U.S. 29, 42, 129 S. Ct. 2294, 2303 (2009) (referring to "a deportation proceeding").  An alien who is subject to deportation is an alien who is subject to removal because he is deportable under the INA.

25

status).  Thus, in the case of an alien who does not travel overseas following a

conviction, and who cannot otherwise seek adjustment of status, the section 212(h)

waiver is simply not available as a form of relief.  See Bernabella, 13 I. & N. Dec.

at 43–44; see also Parodi, 17 I. & N. Dec. at 612.

The upshot is that, under BIA precedent, whether an alien who is subject to

deportation is eligible for a waiver under section 212(h) largely hinges on whether

he has traveled abroad after his conviction.  Specifically, an alien who cannot

otherwise seek an adjustment of status—but who has made a trip overseas—is

eligible for the waiver.  In contrast, an alien who cannot otherwise seek an

adjustment of status—and who has not traveled abroad—is not eligible for relief.

In Yeung, the BIA applied this framework and held that the alien, Mr. Po,

could not seek a section 212(h) waiver.  See 76 F.3d at 338.  According to the

BIA, Mr. Po was not eligible for this kind of relief because he "(1) could not file

for an adjustment of status, and (2) had not demonstrated that he had departed and

returned to the United States" following his conviction.  Id.  Before this Court, Mr.

Po argued that the BIA's decision violated the equal protection of the laws, and we

agreed.  See id. at 339–41.  We concluded that the BIA's decision to distinguish

between aliens who had traveled abroad and those who had not was "arbitrary."

Id. at 340.  Precluding an alien, like Mr. Po, of the chance to seek the hardship

waiver "simply by virtue of his failure to depart and reenter" was impermissible. Id.

In Yeung, we remanded the matter to the BIA for it to reconsider its precedent, see id. at 341, but as far as I can tell, the BIA has not done so. Here, in concluding that Mr. Poveda was not eligible for the hardship waiver under section 212(h), the BIA emphasized that he had not "left and re-entered the United States" following his offense. And, in summarizing its analysis, the BIA reiterated that Mr. Poveda was not "a returning lawful permanent resident." This is the same framework we found to be a problem in Yeung.

I recognize that in this case, the BIA did not explicitly say that Mr. Poveda was ineligible for adjustment of status. It merely noted that he had not applied for adjustment of status. However, I do not understand the BIA to have thereby adopted the rule—contrary to its precedent—that an alien can seek a section 212(h) waiver by merely filing an application for adjustment of status, even if that alien is not otherwise eligible for adjustment of status. See, e.g., Bernabella, 13 I. & N. Dec. at 43–44; see also Parodi, 17 I. & N. Dec. at 611–12. And here, it is undisputed that Mr. Poveda could not have sought adjustment of status.[3]

_____

[3] In order to be eligible for adjustment of status, "an immigrant visa [must be] immediately available to the alien at the time his application is filed." 8 U.S.C. § 1255(a). Mr. Poveda has stated that an immigrant visa was not available to him, and neither the BIA nor the

27

Thus, like Mr. Po, Mr. Poveda was rendered ineligible for the section 212(h) waiver "simply by virtue of his failure to depart and reenter" the United States. Yeung, 76 F.3d at 340. As in Yeung, the BIA's analysis here reflects a critical distinction between aliens who have "departed and returned to this country at some point after they became deportable" and those "whose fate has not led them to sojourn." Id. at 341. It is evident that, had Mr. Poveda traveled abroad after his conviction and then returned to the United States, the BIA would have deemed him eligible for the section 212(h) waiver. In view of our decision in Yeung, which rejected this framework, I do not think the BIA's ruling in Mr. Poveda's case can stand.

## II.

The majority sets aside Mr. Poveda's claim on the ground that the BIA has abandoned the framework that it previously espoused. See Majority Op. at 7, 9. Specifically, the majority says that the BIA "now construes section 212(h) to allow only those who seek readmission from outside of our borders or those within our borders who apply for an adjustment of status to obtain a hardship waiver." Id. at 9. The majority thus suggests that the key distinction is between 1) aliens who are seeking admission or otherwise assimilated to the position of those who are

government has suggested otherwise.

28

seeking admission and 2) aliens who are not. See id. at 16–17.[4]  What matters now, the majority indicates, is whether an alien is formally or functionally seeking admission. See id.

I cannot agree because this view fails to take into account governing BIA precedent and ignores a critical aspect of the BIA's actual analysis in Mr. Poveda's case, which applied that precedent. As set out above, the section 212(h) waiver is available to aliens who travel abroad following a conviction and who are then subject to deportation following their return to the United States because of their conviction, and not their inadmissibility. See Sanchez, 17 I. & N. Dec. at 222–23.  Also, aliens who meet this description need not apply for adjustment of status to receive the waiver. See Balao, 20 I. & N. Dec. at 446.  However, these aliens cannot be described as ones who are seeking admission or ones who are essentially in that same position.

To begin, these aliens cannot be said to be seeking admission because they are already back in the United States and they are not charged with inadmissibility at the time of reentry.  Likewise, these aliens cannot be said to be assimilated to

---

[4] The BIA considers an application for adjustment of status to be "a procedural mechanism by which an alien is assimilated to the position of one seeking to enter the United States." Matter of Rainford, 20 I. & N. Dec. 598, 601 (BIA 1992).  This is because, like an alien seeking admission, an applicant for adjustment of status must show that he is admissible to the United States. See 8 U.S.C. § 1255(a).

the position of those who are seeking admission because they are not applying for adjustment of status. So, contrary to what the majority suggests, there are some aliens who are neither seeking admission nor otherwise assimilated to the position of aliens seeking admission whom the BIA treats as eligible for the section 212(h) waiver. These are aliens who have traveled abroad. See Sanchez, 17 I. & N. Dec. at 222–23.

The BIA applied the reasoning set forth in this precedent to Mr. Poveda's case. In rejecting Mr. Poveda's claim of eligibility, the BIA emphasized that he had not "left and re-entered the United States" and that, as such, he was not "a returning lawful permanent resident." This reflects the continuing application of BIA precedent, which allows an alien who has traveled abroad and who is then subject to deportation to seek the section 212(h) waiver, even when his admissibility is not at issue and even in the absence of an application for adjustment of status. See Balao, 20 I. & N. Dec. at 446; Sanchez, 17 I. & N. Dec. at 222–23. For these reasons, and unlike the majority, I cannot say that the BIA has abandoned the framework that we rejected in Yeung.

### III.

The majority states that I have "misunderst[ood] the current state of the governing law" because I have "ignore[d]" changes instituted by IIRIRA.

30

Majority Op. at 9–10, 12.  But the majority never explains how any of the IIRIRA provisions it cites had the effect of changing the BIA precedent which led to denial of relief for Mr. Poveda.

The majority accurately says that, prior to IIRIRA, Congress provided for two types of proceedings—exclusion and deportation—and that whether an alien was subject to one type of proceeding or another depended on whether he had made an "entry" into the United States.  Id. at 10.  IIRIRA replaced the term "entry" with the term "admission," see 8 U.S.C. § 1101(a)(13)(A), grounds of "exclusion" became grounds of "inadmissibility," see id. § 1182, and a unified proceeding—a removal proceeding—was instituted for determining both inadmissibility and deportability, see id. § 1229a(a).

But with regard to these changes implemented by IIRIRA, the majority fails to explain how they detract from the BIA precedent at issue here.  Although these changes in the law are important, they do not affect the substance of the BIA's decision in Sanchez, which allows an alien who has traveled abroad, returns to the United States, and is then charged with deportability based on a conviction to seek a section 212(h) waiver.  See 17 I. & N. Dec. at 222–23.  As shown by Mr. Poveda's case, the BIA, in keeping with Sanchez, continues to inquire into whether a deportable alien has previously "left and re-entered the United States."

31

The majority also points out that, in the course of defining "admission," IIRIRA provided, in general, that lawful permanent resident aliens who travel abroad and who then seek to reenter the United States are not considered applicants for admission. See 8 U.S.C. § 1101(a)(13)(C). The majority is quite correct that IIRIRA carved out an exception to this rule. In general, a lawful permanent resident who has committed an offense that renders him inadmissible should seek admission upon his return from a trip abroad. See id. § 1101(a)(13)(C)(v).

But the majority then goes astray when it asserts that, in light of these IIRIRA provisions, lawful permanent residents who have a conviction, travel abroad, and then return to the United States will only be "subject to grounds of inadmissibility." Majority Op. at 12–13. The majority seems to imply that such lawful permanent residents cannot, or otherwise will not, be subject to deportation on the basis of their conviction, and that as a result, there are no lawful permanent residents who would seek to avail themselves of the rule under Sanchez in order to obtain the section 212(h) waiver. See id.

The majority's argument will no doubt confound the BIA and immigration enforcement officials. Indeed, contrary to what the majority suggests, there are some permanent resident aliens who travel abroad and who are then subject to

32

deportation based on their conviction, rather than their inadmissibility at the time of reentry. See, e.g., Matter of Nelson, 25 I. & N. Dec. 410, 410–11, 415 (BIA 2011) (alien became lawful permanent resident in 1994, was convicted in 1999 of a drug offense, traveled abroad and returned to the United States in 2000, and was subject to deportation based in part on the 1999 conviction, and not his inadmissibility at the time of reentry).

In other words, contrary to what the majority appears to believe, lawful permanent residents who have a prior conviction, travel abroad, and then return to the United States can be subject to deportation based on either their inadmissibility at the time of reentry, see Matter of Casillas-Topete, 25 I. & N. Dec. 317, 317–18 (BIA 2010), or their conviction alone, see Nelson, 25 I. & N. Dec. at 410–11, 415. The majority provides no authority to substantiate its position that these permanent resident aliens can be subject to deportation only because of their inadmissibility, and not because of their conviction.

The result is that, even under IIRIRA, there are some lawful permanent residents who commit an offense, travel abroad, and are then placed in removal proceedings where their inadmissibility is simply not at issue. These are permanent resident aliens who are subject to deportation based on their conviction, and not their inadmissibility. See Nelson, 25 I. & N. Dec. at 410–11, 415. And as

33

I have explained, the BIA's decision in Sanchez allows these lawful permanent residents to seek the section 212(h) waiver.  See 17 I. & N. Dec. at 222–23.

I certainly recognize that, in practice, the general rule that lawful permanent residents who have convictions that render them inadmissible and who travel abroad must seek readmission may make it less likely that these aliens can reenter the United States with permission, such that it would then be possible for them to be subject to deportation.  More simply put, the provision may reduce the number of aliens who would seek to avail themselves of the rule under Sanchez.  But it does not entirely eliminate that group of aliens, and under Sanchez, they would be eligible for the section 212(h) waiver by virtue of having traveled abroad.  See id.

The majority complains that I do not cite a case decided by the BIA after 1996 that states that an alien may receive a waiver under section 212(h) without applying for admission or for an adjustment of status.  See Majority Op. at 13–14.  But, as the BIA's governing regulations make clear, its precedent remains binding until and unless it is modified or overruled.  See 8 C.F.R. § 1003.1(g).  And the majority points to no authority to demonstrate that the BIA has overruled its prior precedent.[5]  More to the point, the BIA's analysis in Mr. Poveda's case makes it

---

[5] Instead, the majority relies on the Seventh Circuit's decision in Klementanovsky v. Gonzales, 501 F.3d 788 (7th Cir. 2007), in order to conclude that the BIA has changed its views. Majority Op. at 7, 9, 16–17.  But the Seventh Circuit in that case merely said that the BIA

34

clear that the BIA continues to adhere to Sanchez—that is, the BIA continues to

apply the rule that an alien who has traveled abroad and who is then subject to

deportation based on his conviction can seek the section 212(h) waiver, even

though his inadmissibility is not at issue and even in the absence of an application

for adjustment of status. See 17 I. & N. Dec. at 222–23. If the majority wants a

post-1996 BIA case that reflects this principle, then it need not look any further

than the case of Mr. Poveda himself.[6]

_____

"appears to have backed away" from its prior position. Klementanovsky, 501 F.3d at 793 (emphasis added); see also id. at 794 (noting that the position "seems to be abandoned" (emphasis added)). And the Seventh Circuit made this observation based on the reasoning that the BIA advanced in that particular case. See id. at 793. In any event, a decision from the Seventh Circuit does not relieve us of our obligation to review the BIA's order in Mr. Poveda's case and apply our prior panel precedent rule.

The majority also points to Matter of Abosi, 24 I. & N. Dec. 204 (BIA 2007), and 8 C.F.R. § 1245.1(f) as indicating that an alien in the United States can seek a section 212(h) waiver only by applying for adjustment of status. Majority Op. at 7–8. But I do not read these to overrule the BIA's decision in Sanchez, which allows some aliens in the United States who are subject to deportation to be considered for the waiver without applying for adjustment of status. Indeed, Abosi and 8 C.F.R. § 1245.1(f) merely clarify that aliens who are facing charges of inadmissibility must apply for adjustment of status. See Abosi, 24 I. & N. Dec. at 205–06 (noting that aliens in the United States "who are seeking to overcome a ground of inadmissibility" must apply for adjustment of status in order to be eligible for the section 212(h) waiver); 8 C.F.R. § 1245.1(f) (addressing section 212(h) "as [it] relate[s] to the inadmissibility of an alien in the United States"). The BIA's decision in Sanchez addresses aliens like Mr. Poveda who are not facing charges of inadmissibility. See 17 I. & N. Dec. at 222–23.

[6] The majority suggests that the BIA's order in this case did not apply the rule laid out in Sanchez, Majority Op. at 14, but this suggestion ignores the BIA's conclusion that Mr. Poveda was not eligible for the waiver in part because he had not traveled abroad. That explanation underscores the reality that, had Mr. Poveda left and returned to the United States, he would have been eligible for the waiver. The majority emphasizes that the BIA in Mr. Poveda's case did not cite Sanchez, Majority Op. at 14, but that is of little significance because it is obvious that the BIA applied the reasoning of Sanchez to Mr. Poveda. Finally, I do not think that the BIA's failure to cite Sanchez in the unpublished, single-member ruling that it rendered in Mr. Poveda's

35

This brings me to a related and final point.  Even if I were to accept the majority's reading of IIRIRA, i.e., that it has rendered BIA precedent "no longer tenable," Majority Op. at 10, it is clear that the BIA itself has not recognized this.  Indeed, all one needs to do is to look at the BIA's actual analysis in Mr. Poveda's case to see that the BIA has not concluded that its prior precedent has been called into doubt by the changes cited by the majority.  What the BIA did in Mr. Poveda's case is the same as what it did in Yeung.  Thus, even if the argument advanced by the majority regarding IIRIRA had any merit, it would only provide another reason for granting Mr. Poveda's petition and remanding the matter to the BIA, so that the BIA could reconsider its precedent.[7]  This, of course, is what the majority has declined to do.

## IV.

For the reasons I have discussed here, it is apparent to me that the BIA

---

case can be thought of as a decision to overrule that prior precedent.

[7] The BIA is the administrative agency that has been entrusted with the task of interpreting and applying the INA in the first instance.  See 8 U.S.C. § 1103(a)(1), (g)(1); 8 C.F.R. § 1003.1(a)(1), (d)(1).  And it is obvious from the BIA's order in Mr. Poveda's case that the BIA has not passed upon the issue of the IIRIRA changes raised by the majority.  In light of this, even if one were to assume that the relevant BIA precedent has been undermined by the IIRIRA provisions that the majority cites, the appropriate course of action would be to let the BIA examine this in the first instance.  See Negusie v. Holder, 555 U.S. 511, 517, 129 S. Ct. 1159, 1164 (2009) (noting that if the BIA has not addressed an issue, it generally should be given "the opportunity to [do so] in the first instance in light of its own expertise" (quotation marks omitted)).

36

continues to treat aliens who travel abroad different from those who do not in determining eligibility for the hardship waiver under section 212(h).  Because Yeung holds that this is unconstitutional, I would grant Mr. Poveda's petition, vacate the BIA's order, and remand for further proceedings consistent with Yeung.